CASE 19.—PROSECUTION AGAINST JOHN HENSON FOR MURDER.—June 17, 1910.

## Henson v. Commonwealth.

Appeal from Knox Circuit Court.

WILLIAM LEWIS, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1. Homicide—Dying Declarations— Evidence—Admissibility. — The statement of decedent, made immediately after he had been advised by a physician that he could not live because of wounds received, that he was not doing anything was a statement of a fact as to what he did at the time he received the fatal wound, and was admissible as a dying declaration.

2. Criminal Law—Trial—Reception of Evidence —Order—Instructions.—Where the court admonished the jury that the testimony of witnesses, introduced in rebuttal to contradict the witnesses for accused, by proving that they had made contradictory statements out of court should only be taken to discredit the witnesses, and not as substantive evidence, the action of the court in admitting evidence in rebuttal, which should have been admitted in chief, was not prejudicial.

3. Homicide— Instructions— Self-Defense.—Where the court charged that if accused believed and had reasonable groin to believe that he was in immediate danger of death or great bodily harm, at the hands of decedent, and that it was necessary or was believed by accused in the exercise of reasonable judgment to be necessary to kill decedent to avert

the danger, he was not guilty, a charge stating under what circumstances accused might be convicted of mander o slaughter, and that to convict accused the jury must believe beyond a reasonable doubt that the shooting was not in his necessary or reasonably apparent necessary self-defense, or not in the necessary or reasonably apparent necessary self-defense of another was not prejudicial.

4. Homicide—Instructions.—Where the court charged that if accused and codefendants conspired to kill decedent and others, and that, in pursuance of the conspiracy, decedent was killed, accused was guilty, and that if the jury had a reasonable doubt of accused having been proven guilty they should acquit him, a charge that, if no conspiracy existed, but at the time accused shot decedent he believed and had reasonable ground to believe that he or the other defendants were in immediate danger of death or of great bodily harm, accused was not guilty, was not erroneous as limiting the jury in considering the plea of self-defense, unless they believed that no conspiracy existed, and thus placing on accused the burden of showing the absence of a conspiracy.

5. Homicide—Self-Defense—Duty to Retreat.—Where decedent and his companion were election officers in the discharge of their duty, and accused wrongfully in their room refused to leave when asked so to do, and occupied a position in the window and then shot decedent, and decedent and his companion had said nothing to justify accused in believing that they would injure him, a case of an affray was not shown, but accused began the difficulty and had no right to stand his ground, so that when decedent and his companion advanced on him it was his duty to retire, and a conviction of murder was justified.

JAS. D. BLACK, BLACK, BLACK, GOLDEN & BLACK, J. D. TUGGLE, D. K. RAWLINGS and S. A. SMITH for appellant.

JAS. BREATHITT attorney general and TOM B. McGREGOR assistant attorney general for Commonwealth.

Opinion of the Court by Judge Hobson—Affirming.

John Henson was indicted in the Knox circuit court. The indictment was in three counts. In the first count it was charged that Henson had conspired

with certain others named to kill S. C. Early and other persons named; and that in pursuance of the conspiracy he had feloniously and with malice aforethought killed Early by shooting him with a pistol. In the second count of the indictment Henson and his associates were charged with murder in the usual form. In the third count of the indictment it is charged that Henson shot and killed Early, and that his associates were present aiding and abetting him. Henson was tried separately. A large mass of evidence was introduced on the trial.

The proof for the commonwealth showed in substance these facts: An election for school trustee was to be held at Flat Lick, Ky. William Bargo and Si Hubbard were the judges of the election and Early was the clerk, having been duly appointed by the county authorities. They went to the schoolhouse for the purpose of holding the election. After they had put up the rope to keep persons back 50 feet from the polls, the defendant, John Henson, came under the rope and into the room where they were preparing to open the polls. He presented a paper signed by one of the candidates for school trustee, appointing him as the challenger of that candidate. The officers told him that the paper was not authorized by law and that he could not stay in the room. He refused to leave. While the discussion was going on a voter came in and asked for a ballot. Early declined to issue a ballot until the room was cleared. Henson still declined to go. There were two candidates for trustee. A friend of the other candidate then proposed that he would act as challenger for that candidate, and that he and Henson would both stay in the room. Henson declined to agree to this, and so did the officers. There was considerable discussion over

the matter. Early was sitting down at the desk
with the ballot box in front of him and Bargo was
sitting by him. Henson was standing up on the floor.
Early and Henson had always been friends, and
Early had said nothing to Henson on that occasion
except to tell him positively that he could not stay in
the room and must go out, that is, he had said noth-
ing of an offensive nature or that would justify bad
blood. At this juncture a difficulty arose out in the
schoolhouse yard between a man named Slusher and
a man named Smith, Smith being a friend of Henson.
Early was sitting at the desk looking out through
the window in the direction of this difficulty, when
Henson went quickly to the window on the opposite
side of the room behind Early and asked his friends
on the outside of the house, "Boys, will you stand
by me?" They replied that they would, in substance,
with their lives. Henson then threw one leg over the
window and with one leg on the outside of the
house and one leg inside of the house, drew a
pistol and turning in the direction of Early shot him
three times in the back while he was looking out of
the window on the other side of the room. Early fell
to the floor and died in a few hours. After Early was
shot a number of other shots were fired by Slusher
and his friends on one side, and by Smith and his
friends on the other. But all this firing followed the
shooting of Early by Henson.

On the other hand, the proof for the defendant is
to the effect that before he shot, a difficulty was in
progress on the outside of the house between Slusher
and Smith in which Slusher had shot at Smith; that
when this shot was fired one of his friends on the out-
side called to him, "John Henson, come out of there,
they are going to kill you," that as he went to go out

through the window Bargo and Early were both rushing on him; he drew his pistol; Bargo had his hand under his coat, and about the time he drew his pistol Early was four or five feet from him, and threw his hand in his bosom and made a grab at him; when Early grabbed at him, he got out of the way just a little and fired as he was putting one foot in the window. He then fired twice more and went on out the window. Three other witnesses introduced by the defendant, who were outside of the schoolhouse and looked in through the window, sustain his testimony to the effect that Early and Bargo were rushing at Henson at the time that he fired the shot from the window. On the other hand all the witnesses who were in the house testified that Early and Bargo were sitting quietly in their seats; that Early fell over when he was shot, and Bargo deeming the floor the safest place for him dropped down on the floor and laid there until the shooting was over. All the evidence too shows that neither Bargo nor Early had any weapons. They had said nothing to indicate hostility or intention to do Henson harm. The wounds in Early's back show that he was shot in the back, and the position in which he and Bargo were found when the shooting was over confirms the testimony for the commonwealth. The commonwealth introduced testimony tending to establish the conspiracy as charged in the indictment, and the defendant's evidence tended to show that there was no conspiracy. The defendant's evidence also showed that he was a man of good character.

On these facts the court gave the jury these instructions: "(1) If you shall believe from the evidence beyond a reasonable doubt, that the defendants, John Henson, William Smith, Sr., Finley Smith, Frank

Smith, John Smith, Lee Smith, Felix Smith, Enoch Smith, Mat. Baker, J. H. Warren, Henry Baker, and William Baker, Jr., or any two or more of them, including the defendant John Henson, conspired and banded themselves together and agreed to and with each other, to kill and murder S. C. Early, J. H. Slusher, Dan Slusher, Henry Jackson and other persons unknown to the grand jury that returned the indictment herein, or conspired and banded themselves together and agreed to and with each other to kill and murder any one or more of such persons, and that in pursuance and furtherance of such conspiracy, and in execution thereof, and while the same existed, any one or more of the defendants above named within such conspiracy as included the defendant, John Henson, did willfully shoot and kill the said S. C. Early, in Knox county, Ky., and before the finding of the indictment herein, then you ought to find the defendant, John Henson, guilty of willful murder as charged in the indictment herein. (2) If you do not believe from the evidence beyond a reasonable doubt, that the state of facts as set out in instruction No. 1 above, existed, but do believe from the evidence beyond a reasonable doubt that the defendant, John Henson, in Knox county, Kentucky, and before the finding of the indictment herein, and on the occasion mentioned in the evidence, willfully and feloniously shot and killed S. C. Early, not in his necessary or reasonably apparent, necessary self-defense, and not in the necessary or reasonably apparent, necessary defense of William Smith, Sr., Finley Smith, Frank Smith, John Smith, Lee Smith, Felix Smith, Enoch Smith, Mat. Baker, J. H. Warren, Henry Baker, or William Baker, Jr., then you ought to find him guilty; guilty of

willful murder, if you shall believe from the evidence
beyond a reasonable doubt that such shooting and
killing of S. C. Early, was done with malice afore-
thought; guilty of voluntary manslaughter, if you
shall believe from the evidence beyond a reasonable
doubt, that such shooting and killing of S. C. Early,
was done in sudden heat and passion or in sudden
affray and without previous malice.  (3) If you find
the defendant guilty of willful murder, either under
the first or second instruction herein, you will fix his
punishment at death, or at confinement in the state
penitentiary for life, in your discretion, according
to the proof.  If you find the defendant guilty of vol-
untary manslaughter, under the second instruction,
you will fix his punishment at confinement in the state
penitentiary for a period of not less than 2 nor more
than 21 years, in your discretion, according to the
proof.  If you find him not guilty, you will say so, and
no more.  (4) If you shall believe from the evidence
that no conspiracy existed as defined in instruction
No. 1 above, but do believe from the evidence, that at
the time the defendant shot and killed S. C. Early, if
he did do so, he believed and had reasonable grounds
to believe, that he or the other defendants above
named, or any one or more of them, was
then and there in immediate danger of death
or the infliction of some great bodily harm
at the hands of the said S. C. Early and
William Bargo, or either of them, or any other
person then and there present and acting with them, if
any there were, and that it was necessary, or was be-
lieved by the defendant, in the exercise of a reason-
able judgment to be necessary, to so shoot and kill the
deceased, S. C. Early, in order to avert that danger
real or to the defendant apparent, then you ought to

acquit the defendant upon the ground of self-defense and apparent necessity therefor, or the defense of another and apparent necessity therefor. (5) If you shall have a reasonable doubt from the evidence, of the defendant having been proven guilty, then you ought to find him not guilty; or, if you shall believe from the evidence beyond a reasonable doubt that the defendant has been proven guilty, but shall have a reasonable doubt from the evidence as to whether his crime be willful murder as charged in the indictment herein, or of the lower offense, voluntary manslaughter, included in the indictment herein, then you ought to find him guilty of voluntary manslaughter, and fix his punishment as provided therefor in instruction No. 3 above."

The jury found the defendant guilty of murder as charged in the indictment, and fixed his punishment at confinement in the penitentiary for life. The court refused to grant a new trial, and entered judgment on the verdict. The defendant appeals.

It is insisted for the appellant that the court erred in allowing the dying declaration made by the deceased to be admitted in evidence. After the deceased had been advised by a physician that he must die, when he was gasping for breath, and just before he died, he said to his wife, "Ellen, I am gone, but I wasn't doing a thing." It is insisted for the appellant that this declaration does not show what the deceased referred to and that he states merely a conclusion, and not a fact. The doctor was present; the doctor had just advised him that he could not live; and in this connection the deceased turned to his wife, and made the statement above quoted. His wound was the thing in his mind; the wound was the

subject of the conversation, and the wound was manifestly the subject of the declaration to his wife. The statement that he was not doing a thing is not a conclusion but a statement of a fact. We had this precise question before us in Pennington v. Commonwealth, 68 S. W. 451, 24 Ky. Law Rep. 321, and there so held.

It is also insisted that the commonwealth was allowed to introduce evidence in rebuttal which should have been admitted in chief. We have examined the rebuttal evidence with some care. The court attempted carefully to confine the evidence to matters in rebuttal. The transcript of the evidence before us covers more than 800 pages, and in so long a trial it would naturally happen that some things that a witness had said in chief would be repeated in rebuttal, for a circuit judge in such a trial cannot always remember the minutia of the testimony of each witness; but there was no substantial error in this matter to the prejudice of appellant. The circuit court was careful to admonish the jury that the testimony of witnesses, introduced in rebuttal to contradict the witnesses for the defendant by proving that they had made out of the court statements different from their testimony on the trial, should only be taken to discredit the witness and not as substantive evidence. It is true he omitted to give this caution in some instances. But he gave it so often that the jury could not have misunderstood.

This brings us to a consideration of the instructions given the jury on the trial. The complaint as to No. 2 is that the court used the words "and not" in this instruction where we have underscored them, instead of the word "or." There would be force in this objection if that was an instruction defining

self-defense; but it is an instruction telling them
under what circumstances the defendant might be
convicted of murder or manslaughter; and the court
told the jury that in order to convict the defendant,
they must believe beyond a reasonable doubt that the
shooting was not in his necessary or reasonably ap-
parent self-defense, and not in the necessary or rea-
sonably apparent necessary defense of William
Smith, etc.  In other words, the court told the jury
that they must believe both negatives before they
could find him guilty.  If the court had told the jury
that they might find him guilty if they believed one
or the other of these things, it might be plausibly
argued that the jury was authorized to convict if they
believed one and not the other.  The instruction was
therefore grammatically correct.  The meaning
would have been clearer if the court had used the
words, "'not in the necessary or reasonably apparent
necessary defense of himself or of William Smith,'"
etc.  But the jury could not have misunderstood the
instruction in view of instruction 4, which clearly in-
formed the jury that the defendant was entitled to be
acquitted if he acted in self-defense or in the defense
of any of his codefendants.

It is earnestly insisted that instruction 4 is erro-
neous in the use of the words "if you shall believe
from the evidence that no conspiracy existed, as de-
fined in instruction No. 1 above."  It is said that un-
der this instruction the jury could not consider the
plea of self-defense unless they believed from the
evidence that no conspiracy existed, thus placing
upon the defendant the burden of showing that no
conspiracy existed, and depriving him of the benefit
of a reasonable doubt on that question.  But it will
be observed that the court used the words "no con-

spiracy existed as defined in instruction No. 1,'' and in instruction No. 1, the jury were told that they must believe from the evidence beyond a reasonable doubt the facts therein set out in order to find the defendant guilty. It will also be observed that in the fifth instruction the jury were told that if they had a reasonable doubt from the evidence of the defendant having been proven guilty, they ought to find him not guilty. In view of these two instructions, we do not see that the jury could have misunderstood the court's meaning.

It is insisted that the instructions given in this case are practically the same as those in Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476, and that in that case the instructions were condemned, and the judgment reversed for the reason that they did not embrace the idea that to deprive the defendant of his right of self-defense it must appear that although a conspiracy existed, the conspirators went to the place where they expected to find the deceased for the purpose of killing him or that when they met him they first commenced the difficulty by shooting or making a demonstration to shoot him, as set out in instruction 7, directed to be given on another trial of that case. There would be much force in the objection if this case was like the Gambrell Case. The court should properly have instructed the jury along the line indicated in instruction 7 in the Gambrell Case; but the question is, under the facts of this case: Was the failure of the court to so instruct the jury an error to the prejudice of the defendant's substantial rights? In the Gambrell Case, an affray took place between the deceased and his friends and Gambrell and his friends, in which each party was shooting at the other, and the evidence was very conflicting as to

who commenced the difficulty or was the cause of its being begun.  That is not this case.  Early and Bargo were officers of the law.  They were at the place of their duty, and in the discharge of their duty. The defendant had no right in the room.  He was again and again commanded by the officers to leave the room and refused to do so.  They were unarmed, they had made no attack on him or evidenced any intention of hurting him.  They had from his own statements said nothing to justify him in believing that they would hurt him.  It was not the case of an affray between two parties of men, each shooting at the other. The officers of the law when the defendant refused to leave the room had the right to put him out by force, and he had no right to resist them.  If it is true as he states that when he shot, Early and Bargo were advancing on him and Early was about to reach him with his hands, all he had to do upon his own statement was to swing himself out of the window in which he was with one leg already on the outside. His turning back into the room and shooting one of the officers was entirely unnecessary on his own statement.  This was not a case where the defendant had the right to stand his ground.  He was in the wrong. He had no right to remain in the window, and when he saw the officers coming toward him he should have gotten out of the window.  The officers were in the room; none of his party were in the room.  The officers were making no attack on any of his friends and had said nothing to them.  There is not a scintilla of evidence in the record to support the idea that he shot one of the officers in the defense of his friends.  In the Gambrell Case there was a conflict in the evidence as to who began the shooting or made the first demonstration of hostility with firearms.  In this case, the

defendant was the only person in the room who was armed. He was the only person who used any weapon. It was material in the Gambrell Case that the attention of the jury should be drawn to the question, who began the difficulty, and thus made the shooting by the other parties necessary; but that was not a material question here. The defendant on his own showing began the difficulty in the room by drawing his pistol and firing three times at Early, an officer of the law in the discharge of his duty. To reverse this case because an instruction as in the Gambrell Case was not given would be to trifle with substantial justice. In a number of cases we have held that the jurisdiction of this court in criminal cases is only such as is conferred by law, and that one of the limitations upon our jurisdiction is that a judgment of conviction shall not be reversed for any error, unless upon a consideration of the whole case, the defendant's substantial rights were prejudiced. See Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239; Parrish v. Commonwealth, 136 Ky. 77, 123 S. W. 339; Gordon v. Commonwealth, 136 Ky. 508, 124 S. W. 806; Oldham v. Commonwealth, 136 Ky. 789, 125 S. W. 242, and cases cited. Under the rule laid down in these cases we are constrained to hold on the whole record, in view of the facts in the case, that the defendant's substantial rights were not prejudiced by any of the matters complained of.

Judgment affirmed.