## Philpot v. Commonwealth.

(Decided June 23, 1922.)

### Appeal from Rockcastle Circuit Court.

1. Homicide—Dying Declarations—Res Gestae.—The statements of the deceased, "I have been shot for nothing" and "I have been killed for nothing," made after the shooting and while on his way to a drug store to obtain medical assistance, are held to be too far removed and separated from the shooting to be admissible in evidence as a part of the res gestae.
2. Homicide—Dying Declarations.—Statements of the deceased made after the shooting and in the presence of the accused that "I have been shot for nothing" are inadmissible in evidence, since they

are the mere conclusions of the deceased and not statements of fact.

3.  Homicide—Statements of Conclusion of Deceased.—It is incompetent for a witness to give his conclusions as to a non-technical subject, and the statement of deceased made in the presence of the accused that "I have been shot for nothing," proven by witnesses to whom the statement was made, is competent only in so far as it would be competent were it made by a living witness, and since such statement was the expression of an opinion or the conclusion of the deceased it is inadmissible in evidence.

4.  Criminal Law—Credibility.—As affecting the credibility of the testimony given by the accused, it is competent to show that he has been convicted of a felony, but when interrogated on that subject and his evidence indicates a conviction for some offense, but does not show whether it was or was not a felony, he should be given the opportunity on cross-examination of explaining the charge against him and the character of the sentence imposed.

C. C. WILLIAMS for appellant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and W. N. FLIPPIN for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The appellant, A. W. Philpot, was indicted in the Rockcastle circuit court for the murder of William Powell, committed on August 1, 1921. He was tried and found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for fifteen years. On this appeal he is complaining of various errors alleged to have been committed on the trial but we shall discuss only those of sufficient importance to merit consideration.

A few days before the shooting of Powell, appellant was appointed marshal of the town of Livingston. On the day of the shooting he was given a warrant for the arrest of the deceased, whom he did not know. Upon inquiry the deceased was pointed out to appellant who then proceeded to the place where the deceased was standing, and, as he said, told the deceased that he had a warrant for his arrest. He testified that deceased turned and asked, "what for," and put his hand to his pocket as if to draw a pistol, and thereupon he (appellant) drawing his pistol, ordered deceased to throw up his hands, but deceased refused to put up his hands and continued in the attempt to draw his pistol and appellant then shot deceased through the abdomen, fatally wounding him.

Immediately after the shooting appellant disarmed deceased, taking a 38 Colt Special from his hip pocket. The story told by appellant is corroborated by several witnesses who saw the shooting and who testified that Powell had a pistol and attempted to draw it when appellant informed him of the existence of the warrant and attempted to execute it. On 'the other hand, a number of witnesses testified that appellant approached deceased and ordered him to "stick up his hands" three times, and deceased looked at appellant and said, "what for," without making any effort to resist arrest or to draw a pistol; that appellant then fired the only shot that was fired and immediately searched deceased and removed a pistol from his hip pocket. All of the witnesses agreed that after the shooting appellant took Powell by the arm and assisted him to a drug store to obtain medical assistance; but some of the witnesses for the prosecution testified that immediately after the shooting appellant cursed deceased and told him that he would shoot him in two. While on the way to the drug store Powell repeatedly said to those whom he met on the street, "I have been shot down for nothing," or "I have been killed for nothing." There is some testimony tending to show that appellant contradicted the statement a time or two and said to deceased, "I did not want to shoot you but you were going to shoot me."

The trial court permitted a number of witnesses to testify to the statements of deceased as indicated, "I have been shot for nothing," or "I have been killed for nothing," and also permitted one witness to testify that after Powell reached the drug store, and apparently when appellant was some distance away from him though in the store, he said, "I wish you would let him come on and tell me what he shot me for." It is not shown whether appellant heard the latter statement but there is some evidence indicating that he could have heard it.

The declarations that we have referred to are complained of as prejudicial on the theory that they were not a part of the res gestae, and, moreover, that they were mere conclusions of the deceased which in no event should have been admitted in evidence. It is not made to appear definitely when the statements were made in point of time with reference to the shooting, but it is shown that they were made while the two were walking to

the drug store. They do not seem to have been spontaneous expressions superinduced by the shooting, and, not being such, in our opinion were too far removed and separated from the shooting to be admissible as a part of the *res gestae*. (10 R. C. L. 978, 980; 22 C. J. 469.) Their competency, however, is urged on the ground that they were made in the presence of appellant. But that fact will not render them competent if they were mere conclusions of the deceased and not statements of fact. It is a rule of evidence that dying declarations are competent only if they would be competent as coming from a living witness, and it is equally well settled that it is not competent for a witness to give his conclusions as to a non-technical subject. He must state the facts from which the jury is to draw conclusions. The statement, "I have been shot for nothing," was a conclusion and not a statement of fact. It represented Powell's conception of the facts and was manifestly inadmissible in evidence. The identical statement complained of was held erroneous in Collins v. Commonwealth, 12 Bush 271; Jones v. Commonwealth, 20 Ky. L. Rep. 355, and Rooney v. Commonwealth, 193 Ky. 726. In those cases the statements were made as dying declarations, but in each case it was pointed out that dying declarations are competent only insofar as they would be competent were they made by a living witness, and that it would not have been competent for a living witness to say, "He shot me for nothing," since such a statement in its essence is a mere expression of the opinion or conclusion of the witness. This rule of evidence is elementary and, where it is repeatedly violated on a vital issue in the case, prejudicial effect may be presumed. But in this case it can be seen at once that the testimony was prejudicial, for it was reiterated many times in the course of the trial and as repeated by each witness carried the added weight of a solemn declaration from one who conceived himself to be fatally wounded. For this reason the judgment must be reversed.

As it will be necessary to have another trial of the case we deem it proper to call attention to an error which alone might not warrant a reversal of the judgment, but which should be avoided on a retrial. The prosecuting attorney was permitted on cross-examination to ask appellant if he had ever been convicted of a felony or of an offense for which the punishment was confinement in the

penitentiary. Appellant replied that he had not, but volunteered the statement that he had been placed in a military jail for desertion. Counsel then asked the witness whether he had ever been convicted of any crime, and the witness replied that he had but "they put up a job on me." He was next asked what penitentiary he had been in and he replied that he had not been in a penitentiary but had been in a reformatory. All of this evidence was admitted without objection. On re-direct examination counsel for appellant sought to show that appellant had gone away from the army and stayed over time and had received a sentence from a court-martial, but on objection from the Commonwealth the witness was not allowed to answer the questions which sought to elicit that evidence or to explain his previous testimony. The trial court evidently misunderstood the witness, and construed this testimony to be an admission of a conviction of a felony, and under that misunderstanding instructed the jury as follows: "I permitted it to be shown that the defendant had been convicted of a felony. You will consider that testimony only for the purpose of impeaching the witness, if it does, and affecting his credibility as a witness and for no other purpose." The admonition assumed that there was proof that appellant had been convicted of a felony when in fact he stated that he had not been convicted of a felony, although he admitted that he had been convicted in a court-martial proceeding. If he has been convicted of a felony it is competent for the Commonwealth to prove that fact, but when interrogated on that subject and his direct evidence indicates a conviction for some offense, but does not show whether it was or was not a felony, he should be given the opportunity of explaining the charge against him and the character of the sentence imposed. This error alone, as we have said, might not be considered prejudicial, but, as the judgment must be reversed on the other ground referred to, attention is called to this feature of the case so that it will not recur on another trial.

We have observed no other errors in the record prejudicial to appellant's rights, but for the reasons indicated the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.