## Jack and Charlie Caudill v. Commonwealth.

### (Decided May 24, 1927.)

### Appeal from Floyd Circuit Court.

1. Homicide.—In prosecution for homicide, evidence showed that declaration by deceased, made nine hours after shooting and some time before death, was not made under "sense of impending death" when all hope of recovery had been abandoned, so as to render it competent as dying declaration.

2. Homicide.—Part of dying declaration, that defendant shot deceased for nothing, held merely conclusion of declarant, and should have been kept from jury.

3. Homicide.—Portion of dying declaration, that deceased was killed because he would not live with his wife, and explanation as to why

he could not live with her, was incompetent, and should have been kept from jury.

4. Homicide.—Only acts done and statements uttered at time of final fatal encounter, res gestae in strict sense, are admissible as "dying declaration."

5. Homicide.—Portion of dying declaration, that defendants had had it in for deceased for some time, held not part of res gestae of final fatal encounter, and was inadmissible.

6. Criminal Law.—In prosecution for homicide instruction assuming that defendant killed deceased held erroneous.

7. Criminal Law.—Plea of not guilty puts in issue all essential facts, and instructions authorizing conviction must require jury to believe from evidence beyond reasonable doubt all facts necessary to conviction.

JOHN CAUDILL, J. P. TACKETT and O. C. HALL for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellants, Jack Caudill and Charlie Caudill, prosecute this appeal from a judgment of the Floyd circuit court convicting them of manslaughter and sentencing them to confinement in the state penitentiary for 21 years.

They assign, as reason for reversing the judgment, error upon the part of the trial court in admitting as testimony against them the alleged dying declaration of J. S. Henry, who was killed by appellant, Jack Caudill. A written statement signed by deceased was read to the jury over the objection of appellants. It is insisted that the evidence is not sufficient to establish that when it was made declarant was in extremis, and also that certain portions of it were incompetent because mere conclusions. The rule declaring when statements made by a person may be introduced in evidence as his dying declaration was well written in Petty v. Commonwealth, 178 Ky. 483, 199 S. W. 20:

"It must be remembered, that the admission of a dying declaration in any case is an exception to the general rules of evidence. Therefore, to bring into operation this exceptional rule, it must appear that the declaration was made in extremity, when the person was at the point of death, and when every

hope of recovery was gone, every motive to false-hood was silenced, and the mind was induced by the most powerful considerations to speak the truth; a situation so solemn is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice. R. C. L. p. 537, section 80; Tibbs v. Commonwealth, 138 Ky. 558, 128 S. W. 871, 28 L. R. A. (N. S.) 665. Although it is essential to the admissibility of a dying declaration that it be made under a sense of impending death, it is not absolutely necessary that the declarant express in so many words his apprehension of such death. It is enough if it satisfactorily appears in any mode that the declaration was made under that sanction whether it be directly proved by the express language of the declarant, or be inferred from his evident danger or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of his mind. R. C. L. p. 545, section 92.''

The only evidence to be found in the record qualifying the written statement introduced as the dying declaration of deceased is the following from the witness F. E. Damron, who reduced it to writing:

"Q. Did you talk with him about his condition? A. Yes, sir.

"Q. Did he say anything about whether or not he could live or was going to die? A. He didn't think he was going to get well. (Defendants object. Overruled. Exceptions.)

"Q. Did he express any hope of recovery there, Mr. Damron? A. He wasn't asked that; nothing said about it.

"Q. He did say there that he couldn't live? (Defendants object. Overruled. Exception.) A. He didn't think he could.''

This witness had not previously known deceased. He saw him at the railroad station awaiting the arrival of a train to take him to a hospital at Martin, Ky. He had been shot about 9 o'clock at night, and this was about 5:30 the next morning. It will be observed that the witness states that nothing was said to or by deceased as to whether he had any hope of recovery. In each instance,

when the witness was asked whether deceased had said anything to indicate whether he would live or not, he did not answer directly, but gave his own conclusion that deceased did not think he was going to get well. Nothing that deceased said on that question is told by the witness who took his statement. He had been wounded by a pistol ball which struck him in the stomach, and which lodged somewhere within him. The statement was made approximately nine hours after he had been wounded. It does not appear that he had been advised previously by physicians who had attended him or any one else that the wound was fatal or that he had expressed or that he himself had realized that such was the fact. He was then on his way to a hospital for treatment. He did not die until some time the following night. Under these facts the court can but conclude that deceased's statement to witness Damron, which was reduced to writing and permitted to be read in evidence, was not made under that sense of impending death, when all hope of recovery had been abandoned, so as to render it competent as his dying declaration, and that the trial court erred in admitting it in evidence.

Dr. W. L. Stumbo, a physician and surgeon, testified herein as to a statement made to him by deceased, which was permitted to go to the jury as his dying declaration. Declarant appears to have been in extremis when this statement was made. He had told the doctor that he was going to die, and the doctor had advised him that that was true; that he could live only a short time. As to the statement, the doctor testified:

"A. Well he said that Jackie Caudill shot him and shot him for nothing, was about what he said, was the way he spoke it, and he also stated something about his wife and said—he made motions to me that he didn't want to tell her or that he wanted her to leave the room, and I asked her to leave the room and she did, and he says, 'I was killed because I wouldn't live with that woman.' And he says, 'I couldn't live with her because she went to stay with Jackie, and I couldn't live with her,' was about the words he spoke it in."

This testimony was objected to, the objection was overruled, and plaintiffs excepted. The portion of the statement, "and shot him for nothing," is merely the conclusion of the declarant, and should have been kept

from the jury.  See Barnett v. Commonwealth, 215 Ky. 786, 287 S. W. 12, and Mann v. Commonwealth, 215 Ky. 731, 286 S. W. 1044.  That portion of this statement to the effect that declarant was killed because he would not live with his wife, and his explanation why he could not live with her, was incompetent, and should have been kept from the jury.  The rule has long been settled in this jurisdiction that only the acts done and statements uttered at the time of the final, fatal encounter, the res gestae in a strict sense, are admissible as a dying declaration.  Farley v. Commonwealth, 218 Ky. 436, 291 S. W. 734, and Winstead v. Commonwealth, 195 Ky. 484, 243 S. W. 40.

In the event the Commonwealth, upon another trial, produces evidence sufficient to qualify the written statement as competent, that portion of it reading: "Jackie shot me for nothing; Charlie and Jackie have had it in for me for some time," will not be permitted to go to the jury.  "Jackie shot me for nothing" is merely declarant's conclusion.  In stating "Charlie and Jackie have had it in for me for some time," declarant was not relating any part of the res gestae of this final, fatal encounter.  See authorities, supra.

Appellants complain that instruction No. 3 was erroneous, in that it assumed that appellant, Jack Caudill killed J. S. Henry, and our inspection of the instruction discloses such to be the fact.  This is error, because a plea of not guilty puts in issue all the essential facts, and the instructions authorizing the jury to convict a defendant must require it to believe from the evidence beyond a reasonable doubt all of the facts essential to a conviction, and upon another trial the instruction will be corrected in this particular.

The facts of the case are such that it cannot be doubted that the incompetent testimony, and the error in instruction No. 3 were prejudicial to appellants' substantial rights, and, that being true, a reversal of the judgment is imperative.

Judgment reversed, and cause remanded, with direction that appellants be granted a new trial consistent with this opinion.