## Hunter v. Commonwealth.

(Decided September 27, 1927.)

### Appeal from Harlan Circuit Court.

1.   Criminal Law.—On appeal from conviction where evidence of mur-
     der was overwhelming, error in admitting incompetent evidence
     showing that defendant was charged with breach of the peace and
     with possessing liquor held harmless.

2.   Criminal Law.—On appeal from conviction of murder, where the
     evidence of the murder was overwhelming, error in admitting evi-
     dence that, when defendant was arrested, he still had in his hand
     the pistol with which he killed deceased, and that he stated that
     he had some home brew and asked permission to drink it, held
     harmless.

3.   Homicide.—In prosecution for murder, declarations of the de-
     ceased, made soon after he was shot and when he had given up all
     hope of recovery, held admissible.

4.   Homicide.—In prosecution for murder, dying declaration of de-
     ceased that, when he was shot, he was not doing anything, held
     admissible; being statement of fact and not a conclusion.

G. J. JARVIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellant, June Hunter, has been convicted of mur-
der, and sentenced to confinement in the penitentiary for
life. The appeal is prosecuted from the judgment of the
Harlan circuit court so convicting him.

The reasons urged why the judgment should be re-
versed make it necessary only briefly to summarize the
facts. Wager Wilson, a deputy sheriff of Harlan county,
had certain warrants of arrest in his hands for
appellant. He and Fielden Stanton were in an automo-
bile together and saw appellant a short distance away.
The deputy sheriff called to appellant, "Come over here;
I want to talk some with you;" and he responded, "If
you want to talk to me, you come over here." Long
Branch, a stream with steep banks, ran between where
the two parties were. Stanton first dismounted from
the car, crossed the stream, and started up the other
bank to where appellant was. The deputy sheriff drove
the car some 50 feet after Stanton left it to a better park-
ing place, and left it and started to where appellant was.

According to the testimony of the several witnesses, who testified for the commonwealth, and the only eyewitness to the tragedy, who testified for appellant, when Stanton reached the top of the bank of the little stream near where appellant was, the latter drew a pistol and presented it at him. Stanton raised his empty hands into the air and said: "June, don't shoot me; don't shoot me, June." Regardless of this, appellant fired three shots at him in rapid succession, the last of which was fired after he turned his back and was running from appellant. All the shots took effect, and Stanton died within a few hours thereafter.

By his version of the tragedy, appellant undertook to make a case of self-defense for himself, but he did not testify to anything that Stanton had done or said which gave him reasonable ground for believing that when he fired the fatal shots he was in danger of death or any harm at the hands of deceased. He explained why he shot, in these words:

"I did not know what the men wanted, and I just shot him; I did not know what they wanted or might do to me; they never said a word about having a warrant or anything of that kind; I thought my life was in danger, and I went to shooting."

He was asked:

"Did you have any desire or intention to kill Stanton at the time you did kill him?"

—and responded:

"Well, no, sir; I just—I didn't know what they was going to do to me. It looked pretty suspicious to me, the way they come on me; it looked a little suspicious; they might go to killing me, or do something to me."

Appellant appears to have had some difficulty with his wife a short time before this, and the warrants of arrest in the hands of the deputy sheriff had been procured by her.

Appellant insists that the trial court erred to his prejudice in the admission of testimony against him. While testifying, the deputy sheriff stated, without objection, that he had two warrants for appellant. He was

asked what the warrants charged appellant with, to which appellant objected. The court overruled the objection, and appellant excepted. One warrant charged appellant with breach of the peace; the other with possessing liquor. It is insisted that this was error so prejudicial as to require a reversal of the judgment herein. The testimony was incompetent. It was immaterial what crimes the warrants charged appellant with having committed. It was sufficient to show by the deputy sheriff as his reason for seeking appellant that he had a warrant of arrest for him. It was incompetent to get before the jury in this way evidence that appellant had been charged with other offenses. In view of the overwhelming evidence that appellant was guilty of murder in killing Mr. Stanton, it cannot be said that the evidence complained of played any part in leading the jury to the verdict returned. This evidence complained of, though incompetent, cannot be held to have been prejudicial.

Appellant complains that the trial court erred to his prejudice in admitting the evidence as to what he was doing at the time he was arrested. The testimony complained of was that, when arrested, he still had in his hand the pistol with which he killed Mr. Stanton, and that before the officers left with him he stated that he had some "home brew" there and asked to be permitted to drink it. Strictly speaking, this evidence was incompetent. It was wholly immaterial, and shed no light on the question whether in killing Mr. Stanton he was guilty of murder or manslaughter or was excusable on the ground of self-defense. In view of the overwhelming evidence of appellant's guilt of the crime charged, this evidence, though incompetent, cannot be said to have been prejudicial. We cannot believe that these two trivial incidents led the jury to find the appellant guilty of murder.

Appellant insists that the statements made by Mr. Stanton to witness J. J. Hensley, after he was shot and before his death, were not made under that sense of impending dissolution so as to render them competent as his dying declaration. This contention cannot be sustained. When he made the statements, declarant appears from the testimony to have given up all hope of recovery and to have fully realized that he was at the threshold of death. Hence the statements appear to have been made under that sense of impending dissolution so as to render them admissible as his dying declaration, within the rule on the question recently written by

this court in Caudill v. Commonwealth, 220 Ky. 191, 294 S. W. 1042, if otherwise competent.

It is insisted that the statement attributed to decedent that when appellant shot him he (decedent) "was not doing anything" was a mere conclusion and incompetent under authority of Caudill v. Commonwealth, supra, Farley v. Commonwealth, 218 Ky. 436, 291 S. W. 734, and Winstead v. Commonwealth, 195 Ky. 484, 243 S. W. 40. This contention was answered by this court adversely to appellant in Pennington v. Commonwealth, 68 S. W. 451, 24 Ky. Law Rep. 321. There, in speaking of his own conduct on the occasion when the fatal wound was inflicted upon him, the declarant stated that "he was not doing a thing." It was insisted that that expression was a conclusion and not a statement of fact. The court in the opinion said:

> "As part of the res gestæ, it was proper to allow the declarant to state what he did. When he stated he was doing nothing, he was not stating a conclusion, but a fact."

No other ground is urged as a reason for a reversal of the judgment herein, and this court's consideration of the record discloses that no error to the prejudice of appellant's substantial rights was committed upon the trial below. Hence the judgment must and will be affirmed.

Judgment affirmed.