## Harrod v. Commonwealth.

(Decided December 9, 1927.)

## Appeal from Jefferson Circuit Court (Criminal Division).

1.  Homicide.—In prosecution for murder, evidence on theory of defense that shot which killed deceased was fired on the outside of the house and entered house and struck her accidentally held for jury.

2.  Homicide.—In prosecution for murder, evidence as to defendant's insanity at time of killing by reason of being shell-shocked and gassed during the World War held sufficient for jury.

3.  Criminal Law.—In prosecution for murder, continuance for absence of witness based on affidavit failing to make out case of sufficient diligence and showing that evidence would only have been contradictory of state testimony and cumulative of testimony of same nature held properly denied.

4.  Homicide.—It is realization of impending dissolution by declarant that makes statement competent as a dying declaration.

5.  Homicide.—Statement by deceased, six days after shooting and three days before death, wherein she stated that she had only a few hours to live and also that she was afraid to die, held admissible as dying declaration, as being made under the sanction of approaching dissolution.

6.  Criminal Law.—Conducting preliminary examinations as to competency of dying statement in presence of jury held not erroneous, where greater part of dying declaration was competent.

7.  Homicide.—Court's admonition to jury, after excluding certain parts of dying declaration, that statement was to be considered as testimony of deceased as though present in court testifying, cannot be held prejudicial, where, before submission to jury, such admonition was expressly withdrawn from consideration of jury.

8.  Criminal Law.—In prosecution for murder, excluding evidence which if competent only went to show what record as a whole disclosed beyond peradventure as to unimportant matter held not prejudicial.

9.  Criminal Law.—Refusal of new trial for newly discovered evidence consisting of testimony of similar nature to that given by other witnesses held not error, particularly since witness testified on trial and defendant with due diligence might have brought out in full everything known by such witness.

10. Criminal Law.—In prosecution for murder, refusal of new trial for newly discovered evidence by witness on comparatively unimportant feature and which would have disclosed nothing which was not already before jury from testimony of other witnesses held not error.

11. Criminal Law.—Where defendant in prosecution for murder claimed insanity by reason of shell shock and gas, newly dis-

covered evidence, consisting of affidavit of photographer that defendant at taking of flashlight photographs during argument of case seemed to lose control of himself, held not to require new trial for newly discovered evidence, in that, such occurrence taking place in presence of court and jury, defendant had full benefit of facts then disclosed.

12. Homicide.—Instruction in prosecution for murder, requiring evidence to show beyond reasonable doubt that defendant killed deceased, and further stating that if jury believed defendant at time of firing pistol had reasonable grounds to believe that he was in danger of death or great bodily harm they should acquit him, held not erroneous as requiring belief beyond reasonable doubt that he was in such danger.

13. Criminal Law.—In criminal case, all facts which go to establish guilt of accused must be proved beyond a reasonable doubt, while evidence tending to establish defendant's defense is required to be only believed by jury.

J. C. CLOYD and JAMES H. POLSGROVE for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellant was by indictment charged with the murder of Rosie Nolan, and upon his trial was found guilty and sentenced to death, from which judgment this appeal is prosecuted.

Ed Nolan, the husband of Rosie Nolan, was the brother of appellant's wife, and on the 20th of November, 1926, at the home of Ed in Louisville, appellant shot and wounded Rosie Nolan, as a result of which she died in nine days.

Appellant was 31 years of age, and had been a soldier in the World War, and was shell-shocked and gassed while acting as such in one of the European campaigns. He had been married several years and had four children, the oldest of whom was six years old. A few weeks before the tragedy, apparently because of domestic troubles, his wife took the four children and went to the home of her brother, Ed Nolan.

Appellant did not know where Ed Nolan lived, but having received information on the 20th of November, or a day or two theretofore, of the general location of Ed Nolan's home, went to that section of the city, and, being told where it was, went to that home. He had two or three times before on that day telephoned to the home

in an effort to have a talk with his wife, and finally did talk with her and told her he was coming out to see her, and claims his purpose was to try to induce her to return home. The evidence shows that the Nolans were expecting him, and likewise that he went there armed and in a belligerent state of mind.

The evidence for the commonwealth in substance is that appellant went to the home of Nolan about 4:35 or 4:40 p. m. on the day in question; that he went armed, and had theretofore on that and on other days made threats against Ed Nolan and other members of his family, and said in substance that he was going to kill them all; that on the day of the homicide he said he was going out there and kill Rosie, that she had insulted him over the telephone. When he reached the house Ed Nolan was on the outside closing the shutters, and Nolan says appellant immediately fired two shots at him, whereupon he rushed in the house, closed the door, and that his wife locked it. He also says that he procured his pistol, and that appellant broke in the door and came into the house, and while Mrs. Nolan was at the telephone, probably calling the police, appellant fired and shot her, and when Nolan turned around his wife was lying on the floor, and that then appellant fired one or two shots at him, while he (Nolan) exchanged shots with him after he procured his pistol. The evidence of Ed Nolan is corroborated by a dying statement of his wife to the effect that appellant shot her while she was at the telephone, after breaking into the house.

The statements of Ed Nolan and the dead woman are corroborated in many respects by the evidence of others who heard the shots. On the contrary defendant's testimony in substance is that when he approached the Nolan home Ed Nolan fired the first two shots at him, and that he himself shot twice, but remembers nothing after that.

The theory of the defendant's counsel is: (1) That he did no shooting at all except on the outside of the house, and that if he shot Mrs. Nolan at all it was one of the shots fired either through the glass door or window which entered the house and struck her accidentally; and (2) that because of being shell-shocked and gassed during the World War, having been discharged thereafter from the army for disability, he was at times insane, and that, when he was excited or worked up or agitated about anything, he was insane and did not know what he was doing.

On the first question there is some evidence for defendant by witnesses in the neighborhood that they heard no shots after defendant entered the house; but the direct evidence for the commonwealth by Ed Nolan, and the dying statement of the deceased, is to the effect that appellant broke open the door and shot the decedent while she was at the telephone attempting to call the police.

On the second question the evidence shows that defendant was a soldier in the World War, and was shell-shocked and gassed in one of the European campaigns, and that he was, after the war, discharged from the army for disability. There is likewise evidence tending to show that thereafter defendant when excited or disconcerted was very irritable, and at times did not appear to know what he was doing, and the witnesses detail certain occurrences, happening at different times, tending to substantiate their view that at such times he was not of sound mind. It is contended in this connection that because of the fact that his wife had left home some three or four weeks before the homicide and taken their children and gone to the home of her brother with them, he had become very much exercised and excited, and because of this situation, and particularly because of his devotion to his children, he was not at the time of sound mind.

On the contrary, the evidence tends to show that for six or seven months prior to the homicide he had been employed all the time, and had run and operated, in connection with the proprietor, a retail business in the city, and had at times, in the absence of the proprietor, absolute control of the business, and attended to all of its details, including the taking care of and preserving the money.

Both of these questions were clearly and accurately submitted to the jury, and it is obvious from the verdict itself that the jury accepted the evidence of the commonwealth as to the intentional shooting of the woman, and equally obvious that they found defendant to be of sound mind and responsible for his acts.

Other grounds of reversal urged are: (1) Error in refusing defendant a continuance. (2) Error in admitting the dying statement of Rosie Nolan, in conducting the preliminary inquiry as to the dying statement within the presence of the jury, in admonishing the jury respecting the dying statement, and, in effect, by the ad-

monition, taking from the jury, as claimed, the question whether or not such statement had been made at all as detailed by the witness. (3) Error in the rejection of certain testimony offered by the witness Bernard French. (4) Failure to grant a new trial upon the ground of newly discovered evidence. (5) Error in the self-defense instruction.

Appellant was indicted on the 17th of December, and on the 20th of December his trial was set for the 13th of the following January. When the case was called for trial, appellant filed his affidavit asking for a continuance because of the absence of seven named witnesses, all said to be residents of Louisville. He states that he had a subpoena issued for each of them on the 8th of January, 1927, which subpoena had been delivered to the sheriff; but it is not stated at what time, and the subpoena is not in the transcript. It is stated in the affidavit that the witnesses Philpot and Webber, if present, would state in substance they had heard the prosecuting witness, Ed Nolan, say that he had fired the first shot in the difficulty with defendant, and that he did not know how his wife came to be shot, or which one of them had shot her. Practically the same thing is said as to the witness Brewer. As to three of the other witnesses named in the affidavit, there is no statement as to what could be proved by them if they were present, and as to the other witness named it is shown that on the trial the affidavit was read as her testimony.

Eliminating the three and the last named, the question remains whether the court erred in not granting a continuance because of the testimony which it was alleged Philpot, Webber, and Brewer would give. Brewer testified upon the trial and gave in substance the same testimony recited in the affidavit, while the affidavit of the witness Irene Cook was read on the trial, as recited, as her deposition.

The evidence which it is claimed in the affidavit Philpot and Webber would have given is in substance given by other witnesses. Not only so, it did not go to the vital question of fact in the case. It is relatively unimportant who fired the first shot on the outside; but it is all-important whether defendant accidentally shot the woman while firing at Ed Nolan, or whether, as shown by the evidence of Ed Nolan and the dying statement of Mrs. Nolan, he deliberately shot her after breaking in the door.

Not only does the affidavit fail to make out a case of sufficient diligence by appellant, but it fails to show that he was deprived of the benefit of such important evidence as entitles him to a reversal. The evidence, if given, would have been only contradictory of Ed Nolan and the dying statement, and, there being other evidence of the same nature tending to contradict them, it was only cumulative in its nature and not of that vital character on the main point in issue as entitles him to a reversal for failure to grant the continuance.

The evidence upon which the dying statement was admitted was that of the secretary at the police department in Louisville, who is a stenographer, and who had taken down the statement of the woman on the night of November 26th, six days after she was shot and three days before she died. Reading from either his stenographic notes or a statement transcribed from them, he says that Mrs. Nolan realized her condition and said to him, "I am afraid to die"—that she had only a few hours to live. He was then permitted to read the statement made by decedent, which is that she said appellant called her up over the phone and said he was coming down to the house to kill the whole bunch. So when he came down to the house—he called her up about 4 p. m.—her husband was closing the shutters outside, and he holloed to his wife, "Here he is;" and Harrod, he claimed, fired a shot at him. He ran in the house and locked the kitchen door. Harrod broke down the door and got into the room where she was calling the police over the telephone. About the time she was ready to get the police she said Harrod broke in the door, shot the telephone out of her hand, also shot her, and when he shot he says, "I am going to kill you;" which he did. Of the dying statement the court excluded so much as recited that defendant called up over the telephone and said he was coming out to kill the whole bunch, but permitted the balance of it to go to the jury as competent.

It is the realization of impending dissolution by the declarant that makes his statement competent as a dying declaration. The seriousness of the situation when one realizes that he is about to pass into the great unknown, the mysterious hereafter, is such that the law in its wisdom then dispenses with the necessity for an oath, and assumes that under such solemn conditions all incentive to state an untruth or to fail to state the whole truth is silenced, and that no normal human at such a time will fail to state the truth and the whole truth.

Obviously the language testified to as having been used by decedent brings this case within the reason of the rule. Not only did she say she had only a few hours to live, but she likewise said, "I am afraid to die," which clearly seems to add to rather than detract from the solemnity of the occasion and the value of her statement. Her conviction of approaching death, coupled with her expressed fear of the future, gives rather unusual force to her statement. It does not appear that any doctor had told her she was going to die, but it is obvious that for some reason, known to her, she was convinced of it. It is not even necessary that the declarant express in such a convincing way, as was done here, his apprehension of approaching death; if it appears that the statement was made under the solemn conviction that the end is near, whether it be from the language of the declarant, inferred from his obviously critical condition, or received from the opinions of physicians or nurses, it is competent if made under the sanction of approaching dissolution. Caudill v. Com., 220 Ky. 191, 294 S. W. 1042; Hunter v. Com., 221 Ky. 170, 298 S. W. 379.

Nor did the court err in conducting the preliminary examinations as to the competency of the dying statement in the presence of the jury. While it is deemed the safer and better practice to conduct such examinations outside the presence of the jury, when the examination is held in their presence it is not reversible error in the absence of something more than the mere fact that it was so held. Wilson v. Com., 141 Ky. 341, 132 S. W. 557. In this case the great body of the dying declaration was competent, and it could have been in no sense prejudicial to conduct the preliminary examination in the presence of the jury.

The court in its admonition, after excluding from the jury certain parts of the statement and saying that the rest of it was competent, further said to the jury that the statement was to be considered by them as the testimony of the deceased as if she was present in court testifying, and was to be received by the jury as they might receive the testimony of any other witness given in court; not necessarily accepting it as true, but weighing it and considering it as they would the testimony of a living witness.

If it be conceded this was an erroneous admonition as to how the jury should consider the dying statement, thereafter, and long before the cause was submitted to

the jury, the court expressly withdrew from consideration of the jury the admonition first given, and it could not therefore have been prejudicial.

It is also said the trial court erred to appellant's prejudice in refusing offered evidence to the effect that the witness Bernard French had, after appellant started to Ed Nolan's home, called up the home and asked to speak to Mrs. Harrod; that upon being informed that she was not at home he talked to Mrs. Nolan, the decedent, and told her in substance that appellant was on his way to their home, and that if Mrs. Harrod did not want to see him she had better get out of the way, and, further, that decedent then said over the phone that her husband was then standing outside waiting for appellant with a pistol, and to tell him to come on. Clearly this evidence, if competent, only went to show what the record as a whole discloses beyond peradventure, that appellant was expected at the Nolan home, and whether at the time of the alleged telephone conversation Ed Nolan was or not waiting for him on the outside is unimportant. Obviously this action of the court was not prejudicial.

As to the newly discovered evidence, it is disclosed that a Mrs. Glassner, a neighbor of the Nolans, and who testified as a witness for the commonwealth, but whose name was not on the indictment, would in addition to the testimony already given by her state (a fact which the defendant did not know) that the first shot fired in the difficulty sounded like it was from a smaller weapon than the other shots, and that the two shots fired by appellant while on the outside of the house were the last shots she heard in the whole difficulty—in other words, that she did not hear any shot fired in the house. Similar evidence of this nature was given by several neighbors, and the giving of such evidence by Mrs. Glassner would not have added materially to appellant's defense. Not only so, it appears this witness testified on the trial, and that appellant had ample opportunity to have brought out in full everything she knew and with due diligence might have done so..

The affidavit of Keisker Heinrich discloses that as he was driving along the street just east of where the shooting took place his attention was attracted by a shot in the yard, and he saw a man on the sidewalk dodging, and saw a man near the side door of the house fire another shot; that the man on the sidewalk then had a pistol in his hand and began firing at the man at the side

door; that affiant looked toward the house as he drove away and saw the man on the street loading his pistol near the corner of the house, and then heard some more shots, and that was the last he heard. He states that he had never disclosed this information to the defendant, or any one, until after he heard of the verdict in the case.

Obviously the evidence of this witness would have disclosed nothing to the jury which was not already before it. The fact that the men had a shooting scrape out in the yard was shown by all the evidence, it being only contradictory as to which fired the first shot, and as we have seen that was a comparatively unimportant feature of the trial. Clearly therefore the trial court was justified in not considering this evidence sufficient to authorize a new trial.

The other newly discovered evidence relied upon is presented in the affidavit of one Al Piers, the photographer of a newspaper. He states that during the argument of the case a flashlight photograph of appellant was being taken, and that before it was taken Harrod seemed to be in good spirits and had himself well in hand; but when the flash was made for the picture it greatly excited the defendant and he seemed to lose control of himself and his mind, and it took the jailer and some other persons some minutes to get the defendant back to a normal condition. That although defendant knew the flashlight was to go off, when it did go off he seemed to entirely lose his self-control and his mind and acted like a crazy man.

This incident took place after the evidence in the case had been closed, and during the argument must therefore have occurred in the presence of the court and the jury, and they therefore saw all the witness saw, and defendant had full benefit of the facts then disclosed.

But it is said for appellant that under the language used in the self-defense instruction, before defendant was entitled to an acquittal, the jury was required to believe beyond a reasonable doubt that Ed Nolan at the time was about to inflict upon him great bodily harm. A casual reading of the instrument will disclose the obvious error in this contention.

The language of that instruction is, ''If the jury shall believe from the evidence beyond a reasonable doubt that the shot which killed the deceased, Rosie Nolan, was fired by the defendant whilst shooting at Ed Nolan, but further believe from the evidence that at the time of the firing of said pistol, if he did so, he in good

faith believed, and had reasonable grounds to believe, that he was then and there in danger of death, or the infliction of some great bodily harm, at the hands of said Ed Nolan,'' the jury was directed to acquit him.

It is hardly possible under this instruction that the jury could have understood that they were to believe beyond a reasonable doubt from the evidence the facts upon which defendant predicated his defense. The first paragraph does require them to believe beyond a reasonable doubt that defendant shot Rosie Nolan while shooting at Ed Nolan, but the succeeding paragraph only requires the jury to believe from the evidence the fact that he was shooting at Ed Nolan in self-defense and to protect himself from death or great bodily harm.

The correct rule is that in instructions in criminal cases all facts which go to establish the guilt of the accused must be proved beyond a reasonable doubt, while evidence tending to establish defendant's defense is required to be only believed by the jury. Adkins v. Com., 82 S. W. 242, 26 Ky. Law Rep. 496.

We have carefully scrutinized this record, and have failed to find any error prejudicial to appellant's substantial rights, or which authorizes a reversal; but we confess that the evidence touching the defendant's mental condition and all the facts and circumstances bearing upon that issue have somewhat impressed us. We are unable, however, to say that even on that issue the verdict is so flagrantly against the weight of the evidence as to authorize a reversal. There is no complaint of the instruction on insanity, and it appears to be beyond criticism, and we therefore must be guided by the finding of fact of a properly instructed jury.

Judgment affirmed.

Whole court sitting.