## Roberts v. Commonwealth.

Nov. 9, 1945.

J. J. McBrayer for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Clayton Roberts appeals from a judgment of conviction of the killing of Delbert Trimble and his sentence of imprisonment for 21 years.

The appellant left his home in Campton with a pistol in his pocket. At Jackson he got with a woman, not his wife, and on Saturday, December 23, 1944, went to West Liberty, taking the woman and four quarts of whiskey. They arrived there about 8 o'clock and went to the restaurant of Marie West, to whom the defendant had rented some juke boxes. He had gone there, he testified, to see about some trouble with their operation. He and the woman and a man they picked up on the way drank a quart of liquor as they drove along, and during the next three hours after they arrived they, the proprietress and two young men drank another quart in the kitchen. The deceased, Trimble, had been drunk around town during the day and was in the restaurant in that condition during the evening. Roberts was also drunk. About 11 o'clock, as Trimble was going back

into the kitchen, he was shot four times by Roberts. According to the testimony for the Commonwealth, it was without excuse or justification. The evidence of the defense was to the effect that Trimble was attacking Roberts with a butcher knife when he shot him.

While the wounded man was being taken to Paintsville in an ambulance ·that night, he several times said that he was dying and never expressed any hope of recovery. He stated that he had never seen Roberts before and "that he hadn't done anything to him when he shot him."

After he was operated on the next morning he asked what time it was, and then said he was dying. His grandfather asked him "How it happened," and he replied: "Pappaw, he just shot me; I didn't know him; he just shot me. I didn't know him and never had seen him before." He died about two hours later without ever expressing a hope of recovery.

The appellant argues that these dying declarations were erroneously admitted.

We think the man's condition and his statements do not bring this testimony within the line of cases in which we have held the evidence not to show that the wounded man had given up hope of living or was under a sense of near or impending death; such, for example, where he merely had said he believed he was going to die. We think in both of the instances the conditions under which the statements were made met the test of admissibility.

As to the substance of dying statements, we have held that if they were but mere expressions of opinion or conclusions of the declarant and not statements of fact, they are not competent; such, for example, as "he shot me for nothing," "he was shot without cause and was not doing anything to" the accused. Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176, 181; Cavanaugh v. Commonwealth, 172 Ky. 799, 190 S. W. 123, 128; Philpot v. Commonwealth, 195 Ky. 555, 242 S. W. 839, 25 A. L. R. 1367; Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. 2d 29; Jones v. Commonwealth, 238 Ky. 453, 38 S. W. 2d 251. The first statement that he, Trimble, had not done anything to the man who shot him is a statement of fact and was admissible, for it related to

what the declarant had done. It was not a conclusion as to what the accused had done, or as to the absence of any cause for his action. Pennington v. Commonwealth, 68 S. W. 451, 24 Ky. L. Rep. 321; Henson v. Commonwealth, 139 Ky. 173, 129 S. W. 566; Hunter v. Commonwealth, 221 Ky. 170, 298 S. W. 379; Triplett v. Commonwealth, 245 Ky. 149, 53 S. W. 2d 348; Engle v. Commonwealth, 258 Ky. 118, 79 S. W. 2d 417; Nolan v. Commonwealth, 261 Ky. 384, 87 S. W. 2d 946; Woods v. Commonwealth, 282 Ky. 596, 139 S. W. 2d 439. The second statement that "he just shot me," as a colloquial expression, does carry the implication that it was without cause. But we are unwilling to extend further the rule of exclusion made applicable to the expression, "he shot me for nothing." As related in Stewart v. Commonwealth, supra (235 Ky. 670, 32 S. W. 2d 33), in most jurisdictions, the statement "he shot me for nothing" is held admissible as being a statement of fact, and that Mr. Wigmore had argued that such statements, which are at least on the borderline between fact and opinion, are logically competent as being a common way of expressing a fact.

Nor was it error for the court to hear evidence in the presence of the jury concerning the conditions surrounding the dying declarations. It is true that we have often observed it to be the safer practice for the Judge alone to hear such evidence preliminary to its introduction before the jury in order that it might not prejudice the defendant if ruled incompetent. Walls v. Commonwealth, 257 Ky. 478, 78 S. W. 2d 322. But where it is ruled to be competent, certainly no harm has been done by doing otherwise. Strong v. Commonwealth, 216 Ky. 98, 287 S. W. 235; Harrod v. Commonwealth, 222 Ky. 248, 300 S. W. 625.

The grandfather of the deceased testified that he had been discharged from the Army. An objection was overruled to the question if he knew how his grandson happened to be in West Liberty when he was killed. He answered: "Yes, he wrote he was coming home to be home to take Christmas with his folks." It is argued by the appellant that the fact that the man killed had been serving his country and was at home for Christmas created a sympathy that was prejudicial to him. The answer was irrelevant and incompetent, but innocuous.

In accordance with the provisions of Section 236, Criminal Code of Practice, the jury viewed the scene of the tragedy. The order relating to this showed that the court admonished the jury and sheriff as to their respective duties, as prescribed in the Code, but instead of merely directing the sheriff (who had been just outside the restaurant when the shooting occurred and had gone immediately inside) that he should "merely show the place to be viewed," the order provided that he should "point out the front room, the door leading from the main building into the kitchen and other things connected with the case." The specific directions seem to have been merely surplusage, for it is apparent that the jury entering the small restaurant would have seen all those things; hence even if it should be regarded as an error, it could not have been prejudicial.

The instruction on murder and voluntary manslaughter was that upon the usual predicate of belief from the evidence beyond reasonable doubts the jury might find the defendant "guilty of voluntary manslaughter if the shooting was done without malice aforethought but in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite passion beyond control." It is earnestly argued that the instruction is erroneous in using the phrase "heat of passion" instead of "heat and passion," as the word "and" presupposes that there is something additional to be necessary and the description has been often approved. It is true that "heat and passion" has been used by this court in defining voluntary manslaughter and is used in the statute fixing a penalty for one shooting and wounding another without killing him. KRS 435.180. The clause is to be found also in many approved forms of instruction. The particular instruction given in this case and using the term "heat of passion" has been specifically approved many times. See Instructions to Juries, Stanley, Sec. 868. The terms "heat of passion" and "heat and passion" are used interchangeably, but "heat of passion" is the correct one from the standpoint of grammatical syntax. We speak of "heat of battle" and "heat of argument." There are not two different elements of "heat" and of "passion" involved. The phrase is rather "heated passion" as meaning great warmth of passion, or hot-headed or a heated state of blood, descriptive of a state of mind, of an in-

tense, excited, fiery emotion, of violent anger or rage so suddenly aroused or developed that it suspends the exercise of judgment and dominates the volition so as to exclude premeditation and a previously formed design. Cf. McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. 2d 115.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.