### Lee v. Commonwealth.

(Decided March 14, 1911.)

### Appeal from Clinton Circuit Court.

Commonwealth's Attorney—Latitude in Argument of Case.—No definite rule can be laid down for the guidance and direction of a Commonwealth's Attorney or other lawyer in the presentation of his case, further than that he must deal fairly with the evidence and the application of the law, as given by the court, to the evidence. A broad latitude is necessarily allowed him, and it is only

when it is made clearly to appear that he has gone outside of the record for his facts, and sought by this method to take an undue and unfair advantage of the accused, that the court is justified in interfering.

ELZY BERTRAM, W. G. KEEN and J. O. EWING for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is an appeal from a judgment of the Clinton Circuit Court, sentencing John Allen Lee to confinement in the State penitentiary for three years for wilfully and maliciously shooting and wounding one James Means. The evidence shows that appellant and his family lived in Tennessee near the State line. James Means likewise lived in Tennessee, a near neighbor to appellant. On the evening of the day before the difficulty occurred in which appellant is charged with having shot James Means, his son Tom and Means had some trouble which resulted in Tom's being shot. Appellant and his son, James William, learned that James Means had crossed over into Clinton county, Kentucky, went to Albany, the county seat, presumably for the purpose of taking steps to have Means arrested. Upon a conference with the county officials they learned that, as the difficulty had occurred in Tennessee, no warrant could be issued for his arrest in Kentucky. They alleged that they were advised that a private citizen had the right to make the arrest.

On the morning following, which was Sunday, they left Albany for their home, and when they had arrived within about a quarter of a mile of their home they saw three parties standing in the field about a hundred yards from the road. One of these was Means. Appellant and his son were armed with shotguns. They left the road and entered the field, riding in the direction of Means. Appellant testifies that at that time he did not recognize Means, though he did recognize the men who were with him. As they approached Means moved away from his two associates, off in the direction of a thicket or strip of woods, lying some seventy-five or a hundred years away. There was a knoll between where he and his friends were standing and this woodland; and when he had gone a short distance beyond the knoll and was being pursued and called upon to stop by appellant and his

son, two shots were fired by him. He continued to retreat, pursued by appellant and his son. Finally he took shelter behind a walnut tree, and as appellant and his soon approached, commanding him to surrender, he fired at them and they fired at him. Several shots passed between them. The horse which appellant was riding was shot down and killed. Appellant's son, James William, was shot and killed, and Means was shot in the breast and one side of the face.

Appellant insists that his son, James William, shot Means; but it is the theory of the Commonwealth that appellant shot him. The case was submitted to the jury under appropriate instructions, and, as there was evidence which supported the theory of the Commonwealth, the verdict must be upheld, unless the errors complained of by counsel for appellant were prejudicial of his substantial rights.

Complaint is made of the self-defense instruction because the court qualified it by the addition of the clause in which the jury is told that, if the appellant and his son, James William, by their own conduct in assaulting Means with deadly weapons, brought on the difficulty, they were not entitled to the plea of self-defense. This qualification was undoubtedly correct. There is evidence to the effect that, upon seeing Means, appellant and his son, with an oath, shouted, "Let's go get him," and immediately started in pursuit of Means with their guns presented. Means at that time was fleeing They continued the pursuit and, according to some of the evidence, fired the first shot. While the weight of the evidence is to the effect that Means fired the first shot, still it was proper that both theories should be presented to the jury under appropriate instructions. It is difficult to say who fired the first shot. But certain it is that Means tried to escape, and, seeing that he could not, took refuge behind the tree, while appellant and his son continued in their efforts to capture him, or rather to kill him, for each was firing at him, and in the fusillade he was terribly wounded. The instruction was proper and in nowise prejudicial to appellant.

The serious complaint made by appellant's counsel is that, in his closing argument to the jury, the Commonwealth's attorney transgressed all bounds of propriety and made such an inflammatory speech as was calculated to excite the prejudice of the jury against appellant and

thereby induce it to bring in the verdict which it did. Particular objection is made to that part of the speech in which reference is made to the fact that appellant was engaged in the liquor traffic on the border between Kentucky and Tennessee, and that James Means was likewise engaged in this business; that they were from a moral standpoint, on a parity; the evidence shows that they were engaged in the liquor business; the one as a distiller and the other as a vendor of liquor, and while the statements of the Commonwealth were perhaps somewhat overdrawn, still it is apparent that appellant was not prejudiced thereby. No definite rule can be laid down for the guidance and direction of a Commonwealth's attorney or other lawyer in the presentation of his case to the jury, further than that he must deal fairly with the evidence and the application of the law, as given by the court, to the evidence. A broad latitude is necessarily allowed him, and it is only when it is made clearly to appear that he has gone outside of the record for his facts, and sought by this method to take an undue and unfair advantage of the accused, that the court is justified in interfering. The evidence shows that appellant had armed himself in the way and manner in which he was described by the Commonwealth's attorney, and had gone out to hunt for James Means. The attorney for the Commonwealth likened him unto a wild beast in search of prey. This picture may have been somewhat overdrawn and the illustration not altogether apt, but it furnishes no more ground for reversible error than if the attorney representing appellant had spoken of his demeanor and conduct on the occasion in question as being lamblike and peaceable and his manner as mild as a May morning. Certainly the Commonwealth could not object that appellants' counsel had thus pictured him to the jury.

Upon a careful examination of the record we are satisfied that appellant had a fair trial of his case. The punishment meted out to him by the jury was justified under the facts proven, and the judgment is affirmed.