## Jewell v. Commonwealth.

(Decided· October 3, 1924.)

### Appeal from Daviess Circuit Court.

1. Intoxicating Liquors—Conviction for Unlawful Sale Not Flagrantly Against Evidence, and Directed Verdict Properly Refused.—Question of unlawful sale of liquor held properly submitted to jury, and verdict of guilty not flagrantly against weight of evidence.
2. Criminal Law—Jury Judge of Credibility of Witnesses.—Where there is great conflict in evidence, jury is judge of credibility of witnesses and is final arbiter of all facts.
3. Criminal Law—Refusal of Trial Court to Grant New Trial where Evidence Conflicting Not Disturbed.—Court of Appeals will not reverse judgment of lower court on account of refusal to grant new trial on ground that verdict is flagrantly against evidence, where there was conflict in evidence.
4. Criminal Law—Directed Verdict Never Warranted where there is Any Evidence Conducing to Prove Guilt.—Directed verdict of acquittal is never warranted, where there is any evidence, however slight, conducing to prove defendant guilty.

ELMER L. BROWN and FLOYD J. LASWELL for appellant.

FRANK E. DAUGHERTY, Attorney General, and O. L. FOWLER, City Prosecuting Attorney, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Appellant, Mary Jewell, convicted in the Daviess circuit court of the offense of selling intoxicating liquors

and fined $300.00 and imprisoned sixty days, insists that the judgment should be reversed because (1) it is flagrantly against the weight of the evidence; (2) that the trial court should have sustained her motion for a directed verdict in her favor at the conclusion of the evidence, and (3) because the case is wholly without merit. We will treat these questions together because of their similarity of nature.

The Commonwealth called Gilbert Pate as a witness and after stating that he was acquainted with the appellant; Mary Jewell, was asked:

"Q. Did you ever buy any whiskey from her? A. Yes, sir. Q. Where is her place of business? A. Up here on Main street. Q. East Main street? A. Yes, sir. Q. Were you up there on or about the 8th day of February, this year? A. Yes, sir. Q. Did you go over there? A. Yes, sir. Q. What did you do after you got there? A. Got some whiskey. Q. Who did you get it from? A. Mrs. Jewell. Q. Where was Mr. Jewell at the time? A. He was standing back there. Q. Do you know whether or not he was sick at the time? A. No, sir, I do not. Q. How much whiskey did you get? A. I bought two drinks and a pint. Q. What did you pay for the drinks? A. Twenty-five cents a drink. Q. Who drank the drinks? A. Me and Aubrey Pate. Q. Who did you pay for it? A. Mrs. Jewell. Q. What kind of liquor was it? A. White whiskey. Q. You say you bought a pint? A. Yes, sir. Q. Who did you buy it from? A. From her. Q. What did you pay her for it? A. $2.50. Q. Did you give the money to her? A. Yes, sir. Q. What kind of whiskey was it? A. White whiskey. Q. That was in the city of Owensboro, Kentucky, here on East Main street? A. Yes, sir."

On cross-examination the witness reaffirmed what he had said on direct examination. In addition to his testimony the Commonwealth called C. H. Brady, chief of police of the city, John Lyons, a policeman, and Will Vollman, a member of the police force, and each testified in substance that they were acquainted with appellant, Mrs. Jewell, and with her general reputation and that it was bad for bootlegging.

The appellant, Mary Jewell, took the stand in her own behalf and testified she did not sell to the witness

Pate any whiskey at the time mentioned by him or at any other time, and stated that at the time he was at her place on February 8th, Aubrey Pate and Cort Boone were there with him, that he was drunk when he came and went away so. She then called Aubrey Pate and Cort Boone and each testified that they were there with him and that they did not see him get any whiskey; that they were with him all the time he was there. She also undertook to prove her good reputation, but most of the witnesses said they were not acquainted with it.

While there is great conflict in the evidence there was an abundance for the Commonwealth to carry the case to the jury and to support the verdict. The jury in such a case is the judge of the credibility of the witnesses and it is the final arbiter of all the facts.

We have held in a number of cases, among them Mattingly v. Commonwealth, 199 Ky. 727, that where there is a conflict of evidence the question is for the jury, and this court will not reverse a judgment of a lower court on account of the refusal of the trial court to grant a new trial on the ground that the verdict is flagrantly against the evidence. Dennison v. Commonwealth, 198 Ky. 374; Kennedy v. Commonwealth, 194 Ky. 502; Hutchcraft v. Commonwealth, 190 Ky. 591; Cloninger v. Commonwealth, 195 Ky. 591.

A directed verdict of acquittal in a criminal case is never warranted where there is any evidence, however slight, conducing to prove the defendant guilty of the offense charged. Mattingly v. Commonwealth, *supra;* Gordon v. Commonwealth, 136 Ky. 508; Commonwealth v. Little, 140 Ky. 550.

There was strong evidence for the Commonwealth tending to establish the guilt of the accused. Viewed from this standpoint there was much merit in the prosecution. At any rate we are not warranted in disturbing a verdict and judgment merely because the evidence is conflicting. If that were the rule there would scarcely be a case that could be affirmed, because the evidence is nearly always conflicting. The jury finds and determines all questions of fact in all such cases.

Judgment affirmed.