## Farley v. Commonwealth.

(Decided February 22, 1927.)

### Appeal from Harlan Circuit Court.

1. Homicide—Only Acts Done and Statements Uttered at Time of Fatal Encounter are Competent as "Dying Declarations."—Only acts done and statements uttered at time of final, fatal encounter, constituting res gestae in a strict sense, are competent as "dying declarations."

2. Criminal Law—With Certain Exceptions, Proof of Separate and Distinct Offenses than that Charged is Incompetent, Unless Part of Res Gestae.—On trial of one charged with particular offense, it was incompetent to permit proof of other separate and distinct offenses unless part of res gestae, except in certain instances.

3. Homicide—Admitting, as Part of Dying Declaration, Evidence of Another Offense on Deceased Person, Not Constituting Part of Res Gestae, Held Erroneous.—In prosecution for murder, admission of evidence as part of deceased's dying declaration that defendant committed another offense on person of deceased at such time as not to constitute part of res gestae held erroneous.

4. Homicide—Evidence of Murder Held so Conclusive as to Render Harmless Admission of Incompetent Evidence of Another Offense as Part of Dying Declaration (Criminal Code of Practice, Sections

340, 353).—Evidence in prosecution for murder held to so overwhelmingly establish defendant's guilt as to render admission of incompetent evidence of another offense as part of dying declaration harmless, within Criminal Code of Practice, sections 340, 353, forbidding reversal for error of law not prejudicing defendant's substantial rights.

5.  Criminal Law—Defendant, Failing to Move for Discharge of Jury, Cannot Complain on Appeal of Incompetent Evidence Subsequently Withdrawn from Jury's Consideration.—Defendant may not, on appeal, complain of incompetent evidence which was subsequently withdrawn from jury, with instructions that it not be considered, where he failed to move that jury be discharged because of introduction of incompetent evidence.

6.  Criminal Law—Only Such Errors Occurring at Trial to which Exceptions are Taken and are Shown by Bill of Exceptions May be Considered on Appeal (Criminal Code of Practice, Sections 280, 282).—Under Criminal Code of Practice, sections 280, 282, only such errors as occur during the trial, to which exceptions are taken and which are shown by bill of exceptions, may be considered on appeal.

W. A. BROCK, J. S. FORESTER and J. B. CARTER for appellant.

FRANK E. DAUGHTERY, Attorney General, and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellant, John S. Farley, prosecutes this appeal from a judgment of the Harlan circuit court convicting him of the crime of murder and fixing his punishment at confinement in the penitentiary for life.

As a ground for reversal appellant urges that the trial court erred in admitting as part of deceased's dying declaration the evidence that after the fatal shooting and wounding from which deceased died and when so far removed both in point of time and place from the fatal encounter as not to constitute a part of the res gestae appellant committed another offense upon the person of deceased.

It appears that by the written statement introduced in evidence for the commonwealth as the dying declaration of Myrtle Napier, who was shot by appellant, and who died from the effects of the shot several days later, she detailed not only the acts done and the statements uttered by her and appellant at the time of the fatal encounter, which were strictly speaking the res gestae, but

that she also stated that later on the same day, while carrying her from the scene of the encounter to a hospital, appellant forced her to have sexual intercourse with him.

It is the well settled rule in this jurisdiction that only the acts done and statements uttered at the time of the final, fatal encounter, the *res gestae* in a strict sense, are competent as a dying declaration. See Winstead v. Commonwealth, 195 Ky. 484. It is also well settled in this jurisdiction that upon the trial of one charged for a particular offense it is incompetent to permit proof of other separate and distinct offenses unless part of the *res gestae,* with certain exceptions pointed out in Kirby v. Commonwealth, 206 Ky. 535, not here involved.

It is unquestionably true that the portion of the dying declaration objected to by appellant was incompetent under either of the rules above, and the trial court erred in not sustaining appellant's objection thereto. The incompetent testimony also may be said to be of that character almost uniformly regarded by this court as being prejudicial and necessitating the reversal of a criminal judgment.

However, section 340 of our Criminal Code of Practice provides:

"A judgment of conviction shall be reversed for any error of law appearing in the record when, upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

Section 353 of the Criminal Code is in almost exactly the same language. Those sections of our code limit the authority of this court to reverse the judgment of the trial court for any error of law appearing on the record to cases only where upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced by such errors. The record discloses the error of law above indicated committed by the trial court upon the trial hereof, and it remains to be determined whether thereby the substantial rights of the defendant were prejudiced.

Consideration of this question necessitates a brief statement of the facts appearing. Appellant is 40 years of age; lives near Black Mountain, in Harlan county, Kentucky; is a married man and has a living wife and several children. There lived in about 200 yards of his

home a family of people, Napier by name, consisting of the mother, four daughters and two sons. For about 12 years prior to the homicide appellant and one of the daughters of this family, Myrtle Napier, virtually lived together in adultery, and five children were born to her out of that relation with appellant. The evidence from her mother and sisters tends to establish that for about a year preceding the homicide appellant had been jealously suspicious that Myrtle was bestowing her favors also upon others; that he frequently had charged her with infidelity to him, and in that connection threatened to kill her. Appellant and one of Myrtle Napier's sisters and one of her brothers, the latter about 20 years of age, appear to have spent a week, shortly before the homicide, together, in the hills of Harlan county on a hunting expedition. As the witnesses described it they were "laying out, coon hunting." While they were gone Myrtle Napier, with her children, left home and crossed the mountain into Virginia. When appellant and her brother and sister returned from the hunt he learned that Myrtle was gone, and according to the testimony of her mother and sisters, became very angry, attributed her trip to infidelity to himself, and in unspeakably vile and profane language threatened to kill her at sight. Appellant learned from members of her family one morning the fact that she was returning that day. With this knowledge he procured his automobile and drove it to the foot of the mountain and to a point on the road which she would have to travel in returning and there waited for her. Two or three witnesses who saw him as he went and some of whom rode with him a part of the way in his automobile testified that he was drinking from a bottle of whiskey he had. He waited at the foot of the mountain until Myrtle Napier, her brother and two of her children by him came along. Several witnesses for the commonwealth, among whom were her brother and her little seven-year-old son by him, others who lived in the vicinity and others who happened to be passing, testified fully to the things said and done by him after they met and before the shooting.

A portion of the time what he said and did appears to have been directed to the end that she should submit herself to him in prostitution there on the roadside, and what he said to that end was unspeakably vile and wholly unfit for publication. While his efforts were directed to

this end the first shot was fired, the bullet striking the ground near her feet. The things said to her, however, during the time that elapsed after they met and before he slew her consisted largely of charges that she had been unfaithful to him and recounting the evidences of the fact within his knowledge and his expressed intention to kill her for that reason, all likewise uttered in language so vile and blasphemous as to be unprintable. According to the witnesses for the commonwealth he then raised his pistol in both hands, took deliberate aim at her and fired, heedless of her efforts to placate him and her entreaties to be spared, and of the terrorized cries of his little children by her who were present. He used a .30 caliber Luger pistol, and the bullet struck her in the neck and so injured the spinal cord that the entire lower portion of her body was paralyzed. No one who witnessed or was near the scene of this tragedy testified for appellant. His defense was that both shots fired on the occasion in question were unintentional and purely accidental. After Myrtle Napier was shot she was carried to the home of persons living nearby and subsequently was removed from there in appellant's automobile to the hospital at Black Mountain. He appears to have driven the car and to have assisted in carrying the wounded woman to the hospital. Her brother and little son, who also were with her, testified that when they reached a point on the highway and near the town in which the hospital was located, appellant stopped the car and forced them to leave it. Her brother then made his way into the town and notified peace officers there what had occurred and immediate steps were taken to intercept and arrest appellant. The officers stopped him at a point near the hospital on the highway, and testified that appellant was driving the car and that his victim wounded as indicated was in the seat beside him and that all her clothing was up around her waist and that she requested them to arrange her clothing so as to cover her, she being unable to do so because her arms and hands were paralyzed from the effects of the wound.

The evidence heard upon the trial hereof overwhelmingly establishes that appellant, actuated by the basest of motives, that is, upon the belief that his mistress had been unfaithful to him, willfully and maliciously murdered her. His explanation that the shots fired by him were accidental is not borne out by any of the attendant

circumstances. It is too much to believe that his pistol was accidentally discharged twice on this occasion. Several minutes elapsed between the shots. His explanation that the safety catch had been thrown when he removed the pistol from his pocket without his notice would certainly have been called to his attention by the first shot which he claimed was accidentally discharged. From the evidence herein there was left for the jury to determine only whether from the evidence they believed him guilty of willful murder, or whether the shooting was accidental. It is easily understood how the jury rejected his theory of the case that the shot which killed deceased was accidentally discharged. The chief difficulty we have encountered is to understand, in view of the evidence here, how the jury agreed to a verdict inflicting any less than the extreme penalty for this atrocious murder. In view of the fact that the competent evidence so overwhelmingly establishes that appellant was guilty of murder in shooting and killing his mistress, and the further fact that in inflicting the punishment the jury saw fit not to mete out to him death, the extreme penalty, but imprisonment for life, the lighter punishment provided for murder, the court has concluded that the evidence above indicated, though clearly incompetent, and the error of law committed by the trial court in permitting its introduction, did not prejudice the substantial rights of appellant upon the trial hereof. If the extreme penalty had been meted out to appellant whether the incompetent evidence would have been prejudicial it is unnecessary to decide.

Appellant complains that while the testimony for the commonwealth was being introduced two of the sisters of deceased, Myrtle Napier, were permitted to testify over his objection that appellant also had been too intimate with them. The record discloses that this testimony was objected to at the time it was offered, and that the court overruled the objections and that appellant excepted. However, we find that subsequently the court withdrew all that testimony from the jury and instructed them not to consider it for any purpose. No motion was made at any time that the jury be discharged because of this incompetent evidence that they had heard which might not have been removed from their minds by the admonition of the court. In that state of case appellant

is in no position to complain. The only way after the trial court withdrew this incompetent testimony from the consideration of the jury that appellant could take advantage of the error, if any, and of the possibility that the admonition of the court would not be sufficient to remove this testimony from the minds of the jury, was by motion to discharge the jury. He would have been in position to complain if the trial court had overruled that motion; otherwise, he is in the attitude of having taken his chances with the jury trying him, and now seeks a reversal upon a question never submitted to and passed upon by the trial court.

Appellant complains of a statement made by the trial court, when there was offered in evidence for him an affidavit made by Myrtle Napier after she was shot and before she died contradicting the statements made in her dying declaration, introduced for the commonwealth, to the effect that it was not competent unless defendant could introduce evidence showing the affidavit to have been made by her after she had knowledge that she was *in extremis* and had lost all hope of recovery. The bill of exceptions herein does not show any such statement to have been made by the trial court, and the statment complained of appears in the record for the first time in appellant's motion and grounds for a new trial. The error complained of, if any, occurred during the trial and only such errors as occur during the trial to which exceptions are taken and which are shown by the bill of exceptions may be considered by this court upon the appeal. See section 280, 281 and 282, Criminal Code of Practice, and the notes appended thereto. In addition it appears that the affidavit was permitted to be read in evidence for appellant.

Upon the whole case, for the reasons indicated, the court has concluded that appellant's substantial rights were not prejudiced by the errors of law committed by the trial court to which reference has been made and that we should not in the state of case presented reverse the judgment.

The judgment will, therefore, be affirmed.