## Pitts v. Commonwealth.

(Decided February 8, 1929.)

C. F. SPENCER for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Elsberry Pitts is seeking to reverse a judgment imposing upon him a sentence of eighteen months in the penitentiary for shooting and wounding with intent to kill one Massengill Martin. There were three eyewitnesses to this difficulty, who testified for the commonwealth, and three witnesses who testified for the defendant. According to all the witnesses, Pitts' son-in-law, John Bowen, and his son, Mason Pitts, had halted at a stile in front of the Martin home, and were talking with

Massengill Martin and Luther Martin, when Elsberry Pitts came up. We are satisfied from the evidence that the whole crowd was drunk, and, according to the witnesses for the commonwealth, this is what occurred: Elsberry Pitts came up with a pistol in his hand and said to Massengill Martin, "I am going to kill you," and immediately shot Martin once in the head and once in the leg, from which shooting and wounding, however, Martin did not die. According to Pitts and his witnesses, it occurred in this way: Pitts had no pistol when he came up to where these parties were talking, and did not make any threats, but, addressing Massengill Martin, said "Hello, Uncle Mass.," and he replied, "Hello, Uncle Elsberry." Whereupon Luther Martin said, "You G— d— s— of a b—, you think you are too drunk to speak to me," or "too good to speak to me," as some of the witnesses put it. Whereupon Massengill Martin said, "By G—, I am going to fix you" and started to the house, which was about 100 feet away; that Pitts called to him two or three times to stop, and that Massengill Martin did not stop, and said he would not stop. Whereupon Pitts got a pistol out of the saddle bags which were upon the horse that John Bowen was riding and shot one shot at Martin about the time he got to the steps leading into the house, which struck Martin in the leg and caused him to sink down on the steps.

The jury returned its verdict on Friday, December 2, 1927, which was the next to the last day of the November term of the Powell circuit court, and on that same day the defendant filed his motion and grounds for a new trial, complaining of alleged errors of the court in admitting and rejecting evidence and of the instructions given. The court overruled his motion, entered judgment upon the verdict, sentenced the defendant to the penitentiary, gave the defendant until the first day of the next March term to present and tender his bill of exceptions, permitted the defendant to execute a bond in the sum of $1,000 pending his appeal, and directed the official stenographer to make a transcript of the evidence. On February 28, 1929, the defendant filed with the clerk additional motion and grounds for new trial, setting out certain newly discovered evidence and supported by affidavits, and at the March term he insisted that the court should order this amended motion and grounds filed and should consider it. The court declined to do so. We know of no provision of the law by which the defendant was

entitled to file this amended motion and grounds. The case of Com. v. Wilson, 215 Ky. 743, 286 S. W. 1065, is against him.

We would dismiss the matter with that remark, but he insists on it so strenuously that we will briefly point out its insufficiency. He claims he has found that he could prove by one witness that Luther Martin had said that he bought some stuff from Elsberry Pitts and it was no account, and he had not paid him for it and was going to whip him the next time he saw him. By another witness he says he can prove that, in a conversation between Massengill Martin and his father, John P. Martin, some time after the difficulty, Massengill Martin said to his father, "Didn't I go through the house and show you where I was shot and don't you know I was shot in the back?" His father said, "I don't know any such thing." By some other witnesses he says he can prove that Massengill Martin had some liquor on the morning of the difficulty and gave them a drink out of a jar of liquor, and that Massengill Martin was intoxicated. We cannot see the least bit of merit in this new evidence. The defendant had no trouble with Luther Martin except that, after the shooting of Massengill Martin, Luther Martin seized the defendant and kept him from shooting any more, and it can make no difference how drunk Massengill Martin was; that did not give the defendant a right to try to kill him.

He contends the verdict is not supported by the evidence because it was impossible for the jury to reconcile the evidence of the witnesses who testified in his behalf with that of the witnesses who testified for the commonwealth. He contends that in that situation all the jury could do was guess. The jury cannot believe all these witnesses, because there is one set contending that Pitts shot Martin twice at the stile, while the other set contends he only shot once, and that he shot him in the leg, as Massengill was going into his home, but Massengill exhibited to the jury the places where he was shot and doubtlessly that aided the jury in arriving at a conclusion about how it happened. We have often written that we will not reverse a judgment because the jury believed one set of witnesses rather than another. Blanks v. Com., 223 Ky. 484, 3 S. W. (2d) 1105.

The defendant testified for himself, and on cross-examination, he was asked why he did not leave when he saw Massengill Martin start to the house, and the court

required him to answer. This question seemed to embarrass him very much, and he is arguing now that, by the action of the court in requiring him to answer, he was compelled to give evidence against himself contrary to his constitutional rights. Of course, a defendant cannot be compelled to give evidence against himself. If he wants to sit mute, he may do so, but, if he takes the stand to testify in his own behalf, then he has waived his constitutional rights, and he can be interrogated just as any other witness. There is no merit in the contention that this verdict was not properly reached and that it is not supported by the evidence. We have written that we will not reverse a judgment unless it is so much against the evidence as to indicate it was the result of passion and prejudice and to shock the conscience of the court. The defendant's own evidence was enough to convict him.

He complains that the court entered judgment and sentenced him to the penitentiary while his motion and grounds for new trial were pending, and before they were passed on. The whole basis of this contention is that, in the transcript of the record before us, the judgment and sentence appear on page 6, while the order overruling his motion and grounds for new trial appears on page 7. Both bear the date December 2, 1927. There is nothing in these judgments themselves to show which action was first taken. The presumption in favor of the regularity of the court's orders must therefore prevail, and the presumption is that the judgment overruling his motion and grounds for a new trial was made first, and the judgment entered upon the verdict of the jury, and the sentence followed. Of course, the clerk may have got one on the order book before the other, but that alone does not indicate that the sentence was imposed while the motion and grounds for new trial were pending, and certainly it is insufficient to overcome the presumption of regularity. To entitle a defendant to a reversal, prejudicial error must affirmatively appear. It is not sufficient to show that one may have been made. It must be shown positively that one was made.

Pitts is contending here that if this shooting occurred in the manner testified to by the prosecuting witnesses then he was crazy or did not know the consequence of his act, and could not have acted willfully and maliciously, and that there should have been an instruction to that effect. We will admit that the circumstances do indicate that his act was unnecessary and uncalled for, but

there is no evidence from any one that he was crazy, and instructions cannot be given unless there is some evidence to support them.

His final contention is that he was not given sufficient time in which to prepare his motion and grounds for new trial, but there is no showing that he could have improved on the situation if he had been given more time. The court was about to adjourn, and necessarily had to adjourn on the following day unless the term was extended. By section 273 of the Criminal Code, the defendant had to file his motion at that term unless the judgment be postponed to another term. If the defendant had then moved the court to postpone the judgment in order that he might have opportunity to properly prepare and present his motion and grounds for a new trial, and had manifested to the court some reason for the postponement, there might have been something in this contention, but he did nothing of the kind. He indicated to the court then no reason that he could not properly prepare his motion for a new trial then, and he has indicated here no reason.

The judgment is affirmed.