## Triplett v. Commonwealth.

(Decided Oct. 4, 1932.)

S. MONROE NICKELL, FLOYD ARNETT, J. BLAINE NICKELL and H. C. ROSE for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Normal Triplett, Beech Triplett, and Oakley Triplett, brothers, were indicted in the Morgan circuit court, charged with the crime of murder committed by the killing of Noah Lykins. They were tried together. Beech and Oakley were acquitted. Normal was, by the verdict of the jury, found guilty of the crime of

voluntary manslaughter, and his punishment fixed at ten years in the penitentiary. From the judgment sentencing him, he appeals, insisting that the verdict is not supported by the evidence, and is the result of passion and prejudice; that the court erred in refusing to exclude from the consideration of the jury certain statements made by the attorney of the commonwealth; in the admission, as part of the dying declaration, certain statements made by the deceased, and failing to give to the jury the law of the case.

To consider and properly dispose of his contentions, a summary of the evidence is required. The deceased, Noah Lykins, was the husband of Pearl Sebastian Coffee Lykins. They resided on a tract of land owned by her. Oakley Triplett was a tenant residing with his family on the same tract of land, within a short distance from the residence occupied by Noah and wife. John Mart Sebastian, the father of the wife of Noah Lykins, occupied a residence a short distance from the home of Noah Lykins and wife. Bill Coffee lived in the vicinity of Noah Lykins. On a certain Saturday night in September, 1931, a dance was given by Bill Coffee at his home, which was attended by a considerable number of people, including Noah Lykins and wife, the appellant, and his codefendants. Intoxicating liquors were present and imbibed by many of those attending the dance, including Noah Lykins and Bill Coffee, who became intoxicated. From an early hour in the night until midnight, the dance continued, when those present began to depart for their respective homes. When leaving the dance Noah Lykins and wife were together, she walking in front; he indulging in the use of profane and offensive language addressed to her. She separated from him and disappeared under the cover of darkness. He continued in the direction of his home, and, on reaching it, searched it for her; failing to find her, he went to the home of Oakley Triplett, and, as he approached it, he was cursing and still indulging in the use of epithets directed at his wife.

After a former marriage to each other they had separated; she was granted a divorce and married a Mr. Coffee, who was killed by Noah Lykins, for which he was convicted and sentenced to the penitentiary. While he was confined in the penitentiary, and his wife was the widow of Coffee, the appellant, Normal Trip-

lett, kept company with her. After Noah was discharged from the penitentiary, he and she again married. On the night of the killing, and after Noah Lykins and wife had gone away from the home of Coffee, Oakley Triplett informed Normal Triplett that Noah was talking about him, and stated to Normal that Noah had killed one man and "lets get him first." Soon thereafter the appellant and his two brothers left the home of Coffee and went to the home of Oakley Triplett, which was so close to the home of Noah Lykins that they could hear Lykins calling for and cursing his wife. Normal Triplett and Beech Triplett, on arriving at Oakley Triplett's, stopped at the woodyard While there one of them picked up an ax and carried it onto the porch where Noah Lykins immediately came, still cursing and using indecent epithets with reference to his wife. The theory of the commonwealth as to how the killing occurred is aptly stated in the dying declaration of Noah Lykins, which is in this language:

"Normal Triplett shot me down, then shot me after I was down. The powder burned my face. I had no gun, only a small pocket knife in my pocket. There was not a word passed between any of us."

The appellant's version of the occurrence is best stated by him in these words:

"Noah Lykins came toward the house; just before he got to it, about the gate, he holloed for Pearl, and said: 'Oh, Pearl,' and Oak says, 'She ain't here,' and he called her a bad name and said, 'I am going to kill you,' and said something like that Roman nose son-of a bitch's whore, and Oak said 'Noah go on off, my wife is sick and don't come in, Pearl is not here'; he came right up on the porch and as he entered it he said, 'I have cut one God Damn man's head off and don't care to cut off ten more heads,' and Beech had got up and let him get there, and he walked up on the end of the porch and Beech backed off in front of the door and as he walked up on the porch, Beech said, 'He is going in with a knife open, and I was at the other end of the house, just turned the corner from the porch, ***' and he started for the door when Beech said that he had started to go in the house

on my brother and his family, as he started toward the door, and Beech beat me to the door and just about the time Beech got to the door, Noah whirled back on Beech and Beech said, 'Don't cut me,' and Oak said, 'Normal don't let him cut Beech,' and he ran out the door about that time, just cleared the door, and had a knife in his right hand and was coming on Beech and as he cleared the door, coming out with his knife in his hand, I struck him on the head with the pistol, and the gun fired about the time I struck him, and he dropped to his hands and knees and started rising again, and he said 'God Dam you, let me to you,' and when he said that as he was rising, I began jumping toward the edge of the porch and fired two or three shots, I don't know which one hit him.''

It is plain that the evidence was conflicting. The evidence of the commonwealth established an unlawful homicide with a deadly weapon and identified the accused as the perpetrator. It was necessary and required of the appellant to show he was justified or excusable. Kriel v. Com., 5 Bush, 362. Accepting the evidence of the commonwealth as correct, the appellant was guilty of murder, while that in his behalf established a clear case of self-defense. A conviction on such conflicting evidence will not be disturbed by this court. Jewell v. Com., 204 Ky. 629, 265 S. W. 27; Johnson v. Com., 225 Ky. 413, 9 S. W. (2d) 53; Brewer v. Com., 228 Ky. 128, 14 S. W. (2d) 375; Kidd v. Com., 229 Ky. 87, 16 S. W. (2d) 769; Smith v. Com., 229 Ky. 159, 16 S. W. (2d) 775; Epling v. Com., 233 Ky. 407, 25 S. W. (2d) 1022.

The deceased and the appellant and his brothers were the only eyewitnesses to the tragedy. The fact that the witnesses in behalf of the appellant were more numerous than those for the commonwealth does not of itself warrant this court to interfere with the verdict. Patton v. Com., 219 Ky. 475, 293 S. W. 974; Kennedy v. Com., 194 Ky. 502, 239 S. W. 796. The jury were the judge of the credibility of the witnesses and the weight to be given to the facts and circumstances testified to by them. Ratliff v. Com., 182 Ky. 246, 206 S. W. 497. In view of section 271 of the Criminal Code of Practice, this court will not disturb a verdict of guilty, unless it is flagrantly or so palpably against the evidence as to shock the conscience and compel the

conclusion that the verdict was the result of passion or prejudice. Wells v. Com., 195 Ky. 740, 243 S. W. 1015; Brown v. Com., 226 Ky. 255, 10 S. W. (2d) 820; Abdon v. Com., 237 Ky. 21, 34 S. W. (2d) 742; Tackett v. Com., 229 Ky. 312, 17 S. W. (2d) 241; Jones v. Com., 230 Ky. 24, 18 S. W. (2d) 287.

Viewed in the light of the evidence and these familiar rules, the transparency of the fallacy of the appellant's contention that the verdict is not sustained by the evidence is manifest. Nor was it the result of passion or prejudice.

In the preliminary statement of the case for the commonwealth as authorized by section 220 of the Criminal Code of Practice, the employed counsel of commonwealth used this language:

"Up at the dance the night Noah Lykins was shot, the defendant Normal Triplett gave undue notice and attention to the wife of the deceased, Noah Lykins, which conduct aroused the feelings of Lykins against him."

It should be conceded that, if evidence had been offered to establish the fact contained in this statement, it would have been competent as tending to show motive on the part of the appellant. No evidence was offered or heard supporting it. It was anticipatory, and so known and understood to be by the jury at the time of its making. We are unable to conceive, although no evidence was offered along the line indicated by the statement of counsel, that it was prejudicial to the substantial rights of the appellant. It would be a harsh and unreasonable rule of practice to require the commonwealth to produce evidence to sustain counsel's statement of the case, in every particular; or otherwise the accused would be entitled to a new trial or reversal. If the statement of counsel at the time it was made called for the introduction of evidence which was, in itself, incompetent and prejudicial, a different rule would apply. Little v. Com., 221 Ky. 696, 299 S. W. 563. In the closing argument, the commonwealth's attorney argued that "the defendant, Normal Triplett, when he came back to the home of the dead man that night was not interested in him, but in his wife, and that he went up the hill where she was because he wanted to see her, and get her to stand in with him in this case." This statement was authorized by the

evidence, except so much of it as was his mere opinion. While it is a rule of practice that commonwealth's attorneys should avoid expressions of opinion not based on evidence, the fact that such an opinion is expressed affords no ground of reversal. Wallace v. Com., 229 Ky. 776, 18 S. W. (2d) 290; Phillips v. Com., 227 Ky. 212, 12 S. W. (2d) 305. The evidentiary facts authorized him to draw a legitimate inference and expound it to the jury, but it cannot be said that expressing it violated the rights of the appellant. Johnson v. Com., 225 Ky. 413, 9 S. W. (2d) 53.

Another statement of the commonwealth's attorney, made in his closing argument, was "at the time Noah Lykins was holloing for his wife down there at home and just before the killing, his wife Pearl Lykins was upon the hill just back of Oakley Triplett's house and there is no doubt that Normal Triplett was up there on the hill with her." There was no evidence authorizing this statement. The facts contained in it tended to show motive or malice on the part of the appellant at the time of the killing. The jury by its verdict found him guilty of voluntary manslaughter, or an offense committed in sudden heat and passion or sudden affray, no element of which was malice. The verdict manifests the fact that the jury did not find that the appellant was actuated by malice in the commission of the offense, and that it was not influenced by this statement of counsel. Even if it was improper for him to use the language of which the appellant complains, his so doing was not so prejudicial to the appellant's substantial rights as to warrant a reversal on this ground. Massie v. Com., 36 S. W. 550, 18 Ky. Law Rep. 367.

A part of the dying declaration which was permitted to be heard by the jury was the statement of deceased that, "I was not doing a thing in the world"; "there was not a word passed between any of us." It is argued that this portion of the dying declaration is merely the opinion of the declarant and therefore incompetent. A like contention was made by the appellants in Caudill v. Com., 220 Ky. 191, 294 S. W. 1042; Farley v. Com., 218 Ky. 436, 291 S. W. 734; Winstead v. Com., 195 Ky. 484, 243 S. W. 40. "This contention was answered by this court adversely to appellant in Pennington v. Com., 68 S. W. 451, 24 Ky. Law Rep. 321. There, in speaking of his own conduct * * * when the

fatal wound was inflicted upon him, the declarant stated that 'he was not doing a thing.' It was insisted that that expression was a conclusion and not a statement of fact. The court in the opinion said: 'As part of the res gestæ, it was proper to allow the declarant to state what he did. When he stated he was doing nothing, he was not stating a conclusion, but a fact.' " Hunter v. Com., 221 Ky. 170, 298 S. W. 379, 381.

It is also argued that the court should not have admitted as evidence the statement of deceased to the effect some one came on to the porch after he was wounded. This statement did not relate to, and had no connection with, the transaction in which the deceased was mortally wounded by the appellant. To sustain the objection to it, it is argued that the evidence of the commonwealth showed that the deceased's knife was in his pocket when he was searched after he was shot, while the evidence of the appellant showed that the knife was found on the porch where he was lying after he was shot, and the statement of the deceased contradicted the evidence in his behalf in respect to the knife as well as tended to show that appellant was instrumental in placing the knife on the porch. Such inferences drawn and urged by the appellant are not authorized nor supported by the mere statement of the deceased in respect to some one coming where he was after he was shot. Beside, not every admission of incompetent evidence will warrant a reversal in a case of this character. To authorize a reversal, the incompetent evidence must be such as is reasonably certain to prejudice the rights of the accused, and deprive him of a fair trial. The incompetent evidence complained of was not so important and of such weight that it can be presumed that it was so prejudicial to the substantial rights of the appellant as to authorize a reversal. Sections 340 and 353, Criminal Code of Practice; Howard v. Com., 234 Ky. 45, 27 S. W. (2d) 410; Lee v. Com., 142 Ky. 742, 135 S. W. 315; Bates v. Com., 189 Ky. 727, 225 S. W. 1085; Pitts v. Com., 227 Ky. 792, 13 S. W. (2d) 1053.

Lastly, it is argued that the court improperly failed to give to the jury an instruction telling it that the appellant had the right to defend the home of his brother and its inmates. It was the theory of the appellant that he knocked down the deceased when he was in the act of assaulting his brother, Beech, who was

also a visitor at the home of Oakley Triplett, and that the deceased got up and started, with a knife, to assault the appellant. It was not claimed and there was a showing that deceased made any demonstration toward Oakley Triplett or any inmate of his home. The court submitted to the jury the question of the danger or apparent danger of the appellant, and also of Beech and Oakley Triplett from the assault of the deceased. The court correctly instructed the jury in this respect, and properly declined to give an instruction on the theory of appellant's right to protect the home of Oakley Triplett. Benge v. Com., 71 S. W. 648, 24 Ky. Law Rep. 1466.

The judgment is affirmed.