## Huff v. Commonwealth.

(Decided Oct. 3, 1933.)

J. M. MUNCY and L. D. LEWIS for appellant.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Maynard Huff, John Lewis, and Ray Miniard were jointly indicted for the murder of Bill Nolen. Huff was found guilty of reckless shooting, and his punishment fixed at four years in prison. He appeals.

The facts are these: On Christmas Eve, 1931, Huff, John Lewis, Ray Miniard, and Bill Nolen called at the home of Ben Miniard, where they remained until about 10 o'clock chatting and playing games with Miniard's daughters. While there the four boys partook of a small amount of moonshine out of a pint bottle belonging to Bill Nolen. About 10 o'clock Ben Miniard told the boys that it was time to go to bed, and either to go or stay all night. Ben Miniard kept a vicious dog, and, as the boys were leaving the house and going through the front yard and out into the lane, Nolen said that the dog was liable to bite some of them, and had tried to bite him every time he went there. Thereupon Nolen shot at the dog, and the others also shot. As appellant fired, Nolen stepped in front of him and was shot in the back. Nolen stated to several persons that he was shot by his best friend, and that it was an accident. All the witnesses stated that appellant and Nolen were good friends, and that there had never been any ill feeling between them. After Nolen was shot, appellant as-

sisted the others in looking after him and carrying him to his home, which was about 200 yards distant. Later on Nolen was carried to the hospital at Harlan, where he was operated on, and died about five days later. Opposed to numerous other witnesses, who testified that Nolen said it was an accident, Charlie Johnson, who was a patient in the hospital at the time Nolen was there, testified that Nolen said he was deliberately shot and they tried to pretend it was an accident. Nolen's father also testified that his son said that John Lewis was in front and Maynard Huff was following him; that he thought it was John Lewis who said, "Boys, let's start some shooting," and he told them they had better not shoot as Ben might fill them full of buckshot, "and said he went to pass Miniard and as he passed Miniard Maynard was pulling his pistol and looked at him and gritted his teeth and said he was suspecting Maynard was going to do something to him the way he had acted before that night and he jumped by him and had to step in this mud and started running and said as he started by Maynard he come with his pistol and thought he shot at him the first shot, several shots fired didn't know how many, and one passed close by his head just as he went to make his turn as he turned up toward home, then he threw his head back and he said he saw the fire come out of Maynard's pistol and said he felt that bullet go through me."

The court instructed on murder, voluntary manslaughter, reckless shooting, and accidental shooting.

Appellant insists that the court erred in not giving the whole law of the case. In this connection it is argued that the court should have instructed the jury that he had the right to shoot on the public highway for the purpose of defending himself and his companions against the dog. Although there was a suggestion at the time that the dog would bite, there was no evidence that the dog actually attempted to bite appellant, or any one of his companions, and, that being true, appellant was not entitled to an instruction on that phase of the case. However, as the evidence strongly tended to show that appellant and deceased were on friendly terms, and appellant fired his pistol in the public highway without any intention to kill the deceased, there can be no doubt that under the repeated decisions of this court appellant was entitled to an instruction on involuntary

manslaughter, and the failure to give such an instruction was prejudicial error. Pelfrey v. Commonwealth, 247 Ky. 484, 57 S. W. (2d) 474; Smiley v. Commonwealth, 235 Ky. 735, 32 S. W. (2d) 51; Hatfield v. Commonwealth, 230 Ky. 630, 20 S. W. (2d) 461; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517.

In his testimony as to the dying declaration of the deceased, his father was permitted to testify that the deceased said "he was suspecting Maynard was going to do something to him the way he had acted before that night." It is not clear from the record that there was an objection to this portion of the dying declaration, but, in view of another trial, we deem it proper to say that the statement referred to should be excluded. Only acts done and statements uttered at the time of the fatal encounter are competent as dying declarations (Farley v. Commonwealth, 218 Ky. 435, 291 S. W. 734), and neither the way appellant had acted before that night nor the conclusion which the deceased drew from such previous conduct falls within the rule.

There is some confusion in the phraseology of the given instructions, doubtless due to the manner in which they were copied. On another trial the court will adhere as nearly as possible to the instructions directed to be given in Lewis v. Commonwealth, supra.

Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.