## Huff v. Commonwealth.

(Decided March 8, 1935.)

J. M. MUNCY and J. H. ASHER for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

Opinion of the Court by Morris, Commissioner—
Affirming.

This is the second appeal of this case. On the first trial below appellant was found guilty of voluntary manslaughter and the punishment fixed at four years' confinement in the penitentiary. Upon appeal the judgment was reversed because of the failure of the court to give an instruction on the subject of involuntary manslaughter, and upon a retrial of the case appellant was again found guilty and given a two-year sentence, the minimum under the law as to voluntary manslaughter. For opinion on first appeal, see 250 Ky. 486, 63 S. W. (2d) 606.

A review of the testimony adduced on the second trial and a comparison with the proof on the first trial shows no material difference, both parties perhaps strengthening their proof to some degree, though not so as to require any extended recitation of the facts. The former opinion gives a substantial resume of the facts which led up to and attended the killing of Wm. Nolan by appellant.

In the brief for appellant it is contended that the court failed to give the whole law of the case, as the court is compelled to do under Code requirements and the repeated rulings of this court. Appellant's contention is that a self-defense instruction should have been given because Huff was shooting at two vicious dogs belonging to Mr. Minaird, at whose home Nolan and Huff and others had been visitors up to about 10 o'clock on the night that Huff admittedly fired the shots which caused Nolan's death. The contention in brief is made

that Huff and his friends, including Nolan, were at the time in danger of bodily harm from the dogs, which were known to be vicious. This same contention was made on the former appeal, and the court, in holding no error in failing to give such an instruction, pointed out that there was no showing of impending danger.

On the second trial it was evidently attempted by appellant's witnesses to so fortify the proof with respect to the behavior of dogs as to justify such an instruction as was sought. However, in this attempt there seems to have been a signal failure. There was considerable testimony to the effect that Minaird had two dogs that were known to be vicious; "that they would eat you up." Several witnesses say that the dogs were running and growling. Only one witness says that the dogs were coming in the direction of Huff and his party. Upon a careful examination of the testimony the court is of the belief that on this point the testimony lacked sufficient weight to require such an instruction as is suggested; moreover, appellant was vouchsafed all substantial rights based on his theory, by the accidental shooting instruction as was given.

On the former trial the court below gave instructions on murder, voluntary manslaughter, reckless and accidental shooting. We held in the former opinion that under the facts as detailed the defendant was entitled to an instruction on involuntary manslaughter. On the second trial the court gave the directed instruction in apt language under which the jury could have found appellant guilty of a misdemeanor with consequent punishment. On the objection to the instructions as a whole, it appears that the court guarded the substantial rights of the defendant by giving every possible instruction justified by the proof.

In the former opinion this court held that the statement of deceased made to his father shortly before his death, to the effect that he "was suspecting that Maynard was going to do something to him the way he acted before," should have been excluded, on the ground that only statements with regard to what occurred at the time of the shooting were competent. Farley v. Com., 218 Ky. 435, 291 S. W. 734.

This particular proof was not offered on the second trial, but after it was made clear that Nolan's state-

ments were made in extremis, Nolan's father testified that Bill said that "as he was passing Maynard he was pulling his pistol out and was gritting his teeth at him." While this sort of evidence does not tend to throw much light on the case, it is admissible as a recitaton of what occurred at the time the shots were fired.

Nolan's father was permitted to say that his son told him that when he was shot he "was about as far as Ben's gate from the road when Maynard shot me." This may not have been pertinent evidence, but it is clear that its admission worked no prejudicial error to defendant's rights.

Other objections were made by defendant to various questions and answers allowed to be asked and given; but we have taken them up one by one and find no prejudicial error on this score, as has been urged in appellant's brief.

Due to the fact that there is evidence appearing in the record which tends to show that deceased and defendant were on friendly terms, and that the shot which killed Nolan was not intentional, we have given the appellant's contentions the most careful and serious consideration. However, since his rights appear to have been sufficiently guarded by all instructions to which he was entitled, and no evidence permitted to go to the jury which should not have been admitted, and there appear no errors of such consequence as to lead us to conclude that the defendant has been deprived of any substantial rights, we must affirm the judgment below.

Judgment affirmed.