## Loyall v. Commonwealth.

Jan. 30, 1940.

Will M. Graham for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant having been jointly indicted with Robert Thompson and charged with committing the offense of grand larceny, the jury, upon his separate trial, returned a verdict finding him guilty and fixing his punishment at confinement in the penitentiary for three years.

From a judgment entered on that verdict this appeal is prosecuted.

The sole ground relied on for reversal is the alleged improper statement made by the commonwealth's attorney in his closing argument to the jury, which is as follows:

"The judge of this court has already held that the commonwealth has made out a case against the defendant. Were this not true, you would have been instructed by the court to find the defendant not guilty."

It appears by the bill of exceptions that at the time this quoted part of the argument was made, it was objected and excepted to and the court requested to admonish the jury that the argument was improper, when it further states that:

"The court in his admonition directed the jury in their finding to be governed by the evidence introduced in the case and not by the argument of counsel."

To the admonition given, the defendant by counsel further objected and excepted.

The only question presented for our decision is whether or not this argument of counsel, concededly improper, was in itself so conclusively misleading and prejudicial, when considered in connection with the admonition of the court, directing the jury to be governed in their findings by the evidence and not by the arguments of counsel, as to constitute it a reversible error.

This being the sole question presented, we conclude but a very brief statement of the evidence is here called for, as tending to explain the motive or purpose of the complained of argument of the commonwealth's counsel, that the court had already held that it had made out a case, as otherwise the jury would have been instructed to find the defendant not guilty.

There is nothing in the record tending to show what prompted the commonwealth's counsel to make this argument, unless it was suggested by his own evaluation of the commonwealth's evidence, that it was conclusively sufficient to make out the commonwealth's case against appellant.

The facts shown by the evidence are that Roy Howell moved from his home in Larue county, leaving stored therein two stoves and certain other household furniture

and that thereafter, when the house was untenanted, it was broken into and Howell's two stoves stolen and carried away. The larger and more valuable of these stoves, a cooking range, was about a year later discovered in the home of Elroy Strader and wife in Green county.

Following the discovery and identification of the larger of these stoves, the appellant, Johnnie Loyall, and Robert Thompson were jointly indicted at the October, 1938, term of the Larue circuit court, charging them with the stealing and carrying away of this stove, the property of Roy Howell, etc.

Upon appellant's separate trial, the identification of the stove discovered in the home of Elroy Strader and wife was fully established as being Howell's stove, which had been stolen and carried away about a year previous from his home in Larue county.

Also Strader and wife, the brother-in-law and sister respectively of the appellant, both testified that they had been asked by the appellant to buy the stove, which he represented to them Thompson had and wished to sell, and that he and Thompson brought the stove over to Strader's home the last of October, 1937, for their inspection of it, when they purchased it for the cash price of $15, paying Thompson therefor.

Appellant admits that he owned the stove, but misrepresented its ownership to his brother-in-law, because of his then being indebted to him and he didn't wish to have deducted from the sale proceeds of the stove his indebtedness to him.

Further, appellant claimed to have traded for the stove with one Roebuck Howell, a stranger to him and who was dead at the time of the trial, for a pistol and $5, which he gave him upon Howell's delivery of the stove to him.

The evidence for the commonwealth tended to show that appellant's account of how he got the stove was false. Owen Howell, the brother of Roebuck Howell and with whom he lived, testified that Roebuck Howell was an invalid and confined in his home from some time in September up to the time of his death on November 9, 1937, and therefore could never have made delivery of the stove to appellant at the time claimed by him.

No testimony was introduced for the defendant,

other than his own and that of a few character witnesses, one of whom testified that his reputation for honesty and fair dealing was bad, while two others stated that it was good, notwithstanding their having heard he had been indicted for stealing automobile tires.

Serious complaint is made by counsel of appellant to this statement made by the commonwealth's attorney in his closing argument to the jury, as constituting a reversible error, on the ground that in telling the jury the court had already held that the commonwealth had made out its case, he transcended the bounds of propriety and violated the limitations imposed on the prosecuting attorney to confine himself in his argument to the facts introduced in evidence, the fair and reasonable deductions to be drawn therefrom and the application of the law, as given by the court, to the facts proven.

He contends that the attorney for the commonwealth did not keep himself within the limitations imposed by this rule, but that his statement complained of was unfair and altogether improper and prejudicial, in that it led the jury to believe that the judge believed the defendant to be guilty and had so held, since if that were not true, he would have instructed them to find the defendant not guilty.

Counsel for appellant cites and relies upon four decisions of this court as sustaining his position, that the complained of statement made by the prosecuting attorney in his final argument was effectively calculated to mislead the jury, through telling them the judge had held or predetermined that the commonwealth had made out its case, and thereby induced them to bring in a verdict finding appellant guilty and thus resulted in his failing to receive a fair trial at the hands of an unbiased jury.

The first of the cases relied on is that of Lee v. Commonwealth, 142 Ky. 742, 135 S. W. 315, 316.

The conduct of the prosecuting attorney, there complained of as constituting a reversible error, was that he had made such an inflammatory speech against the appellant as was calculated to so excite the prejudice of the jury as to induce them to bring in a verdict against him.

The court, in answering this contention, said:

"While the statements of the commonwealth were

perhaps somewhat overdrawn, still it is apparent that appellant was not prejudiced thereby. No definite rule can be laid down for the guidance and direction of a commonwealth's attorney or other lawyer in the presentation of his case to the jury, further than that he must deal fairly with the evidence and the application of the law, as given by the court, to the evidence. A broad latitude is necessarily allowed him, and it is only when it is made clearly to appear that he has gone outside of the record for his facts and sought by this method to take an undue and unfair advantage of the accused that the court is justified in interfering.''

The concluding language of the opinion is that:

''Upon a careful examination of the record, we are satisfied that appellant had a fair trial of his case. The punishment meted out to him by the jury was justified under the facts proven, and the judgment is affirmed.''

It is obvious that the ruling in the Lee case does not support appellant's contention here made, since it merely declares the general rules of law with reference to the limitations imposed upon a prosecuting attorney in the practice of his case and the complained of argument there made, while extravagant and perhaps inflammatory, was not found to have so prejudiced the jury against appellant as resulted in denying him a fair trial and therefore that the improper argument complained of did not constitute a reversible error.

The second of the cases cited and relied upon by appellant is Ashcraft v. Commonwealth, 68 S. W. 847, 848, 24 Ky. Law Rep. 488, not reported in state report.

There Ashcraft was indicted and convicted of the offense of murder. Further it appears that he was indicted jointly with his brother, F. M. Ashcraft, and that at the conclusion of the evidence the court gave a peremptory instruction to acquit F. M. Ashcraft, but overruled the motion made therefor as to the appellant.

It is complained that the commonwealth's attorney ''stated in the argument that, inasmuch as the court had sustained the motion of F. M. Ashcraft for a peremptory instruction, and had overruled the same as to E. P. Ashcraft, that he (the court) had evidently thought the defendant guilty.''

The defendant objected to this statement. The court overruled the objection. Upon appeal, this ruling was held to be a reversible error, the court saying:

"Whatever opinion the court may have had as to appellant's guilt or innocence, it was not proper for it to have been imparted to the jury, and, of course, was not proper for the commonwealth attorney to have been permitted to state the fact. It could properly not affect either the fact of the defendant's guilt nor the jury's duty to themselves determine it."

It does not appear in the Ashcraft case that the appellant moved the court to admonish the jury not to consider this improper statement, nor that the trial court sustained the objection thereto, which facts clearly distinguish it from the instant case, in that here the trial court did admonish the jury that they were to be guided, in reaching their verdict, only by the evidence and not by such argument.

The next case cited, and relied on by appellant as supporting his contention, is that of Martin v. Commonwealth, 255 Ky. 529, 75 S. W. (2d) 13. There the improper argument, though in its character much similar to that complained of in the instant case, was much more extravagant and objectionable, in that it both went outside of and was unsupported by the record in stating that the defendant had tried to prevent the indictment and to escape trial, that the prosecutor and the trial judge had been prosecuting criminals for a long period, and that, if the court had not believed the defendant guilty, he would have taken the case from the consideration of the jury.

Upon objection made to such line of argument, the court merely responded:

"If, in arguing the case, he gets out of the record, you are not to consider it. You will listen to his argument. He has a right to discuss the evidence and also the law in the case, but you know when he is out of the law and out of the evidence and you are not to consider it."

However, after the court's ruling, the prosecuting attorney persisted in further improper argument, during which the court remained silent.

Upon appellant's appeal, on the ground that he had

been denied a fair trial by reason of this highly improper argument made and the court's failure to properly sustain the objections made thereto or to properly admonish the jury that it was improper and not to be considered, this court said:

> "It was manifestly unfair to lead the jury to believe that the judge believed the defendant to be guilty and that he was collaborating in the prosecution. We are not unaware of the weight which a jury attaches to the views of the trial judge. It was the duty of the court to sustain the objections to the argument and to admonish the jury clearly and emphatically that it was improper instead of telling the jury that they should be the judge of its propriety.
> \* \* \*
>
> *"Because of the weakness of the case* we are of the opinion that the argument must be held prejudicially improper and that the judgment should be reversed."* (Italics ours.)

While the admonition given in the instant case was perhaps not as plain and forceful as it should have been, it yet directed the jury not to permit their finding to be influenced by such argument and that they were only to be governed in making it by the evidence.

This admonition is unlike that given in the Martin case, and did not leave to the jury's determination the question of which parts of the prosecuting attorney's argument were proper and which were improper and not to be considered by them, but they were expressly told that they were to be governed only by the evidence.

We are therefore led to conclude that the instant case is, also upon such grounds, distinguishable from the Martin case, as well as in the particular mentioned in the concluding words of the opinion; that because of the weakness of the case, the court was led to conclude that the objectionable argument was prejudicially improper and such weakness tended to support the appellant's contention that the jury's verdict returned against him was attributable to the influence and effect of the improper argument, rather than to the strength of the case made out against him.

Such is not the situation in the instant case, where the commonwealth's evidence was abundantly sufficient and strongly tended to sustain the verdict returned against appellant.

Napier v. Commonwealth, 268 Ky. 482, 105 S. W. (2d) 594, 598, is the last of the cases cited and relied on by appellant.

In this case, Beckham Napier, indicted for murder, was upon his trial and conviction given the death penalty.

There can hardly be found a resemblance between the argument of the prosecuting attorney complained of in the instant case and the violent exhortations and vehement harangue there indulged in with gross impropriety by the prosecuting attorney in his closing argument.

This court in its opinion thus comments on the argument made in the Napier case:

"The Commonwealth's attorney went so far as to say to the jury, if they should write a verdict under a manslaughter instruction, they might become an accessory to murder; and again, went so far as to say, over the objection of the court, for the testimony referred to was in no respect competent, that the defendant was a bootlegger, a moonshiner, and came in there claiming self-defense, and the worst thing that he said was that before the finding of the indictment they came in here to plead guilty and to beg for mercy; further, said that if you want to give him what he is entitled to, 'hang this man until Hell freezes over;' also said: 'If they could not give him death to turn him loose;' 'that he had been going around here begging for a life sentence.' It is true the court admonished the jury that such remarks were improper and not in the record and they should not consider them, but that could not and would not remove the effect of such a statement. Again, he said: 'You go in and write a verdict and if you cannot write it for a death penalty, don't write it at all;' that what he wanted was the death penalty, and 'if you cannot give him that, give him nothing and if you can't do that, don't do anything and if you won't do it, I will get a jury from some other county that will write it.'"

The court, in condemning this character of argument as transcending all the bounds of propriety and holding it to be reversibly prejudicial to appellant, said:

"This court has so often heretofore in the strongest language possible condemned arguments, such as

herein referred to, and it occurs to the court attorneys for the Commonwealth should not permit themselves, in their earnestness, enthusiasm, and vigor in prosecuting criminals, to lose their heads and forget, as the Commonwealth's attorney in this case did, that every man, however guilty, in this civilized land of ours is entitled to a fair trial by an unprejudiced and unbiased jury. He should not forget that it is a part of his duty to see that no evidence is presented to the jury that is incompetent or unfair; that nothing should be said by him in an argument that is not based upon the competent evidence in the record; that no statements should be made unless deducible from the evidence in the record that would be calculated to mislead or stir up the prejudice of the jury selected to try the case. As has been often said by this court, the Commonwealth's attorney is an officer of the law; in fact, a quasi judicial officer, Dalton v. Commonwealth, 216 Ky. 317, 287 S. W. 898. * * * It is not conceivable that any statements could have been made that would be more calculated to embarrass, intimidate, and stir up the passion and prejudice of a jury than those statements. No one, in making those statements, would have more influence over a jury than the Commonwealth's attorney, an officer of the law, who has taken an oath to see that the law is enforced properly. We have been driven by these uncalled for remarks and statements made by the Commonwealth's attorney and his assistant, which are entirely improper and prejudicial to the rights of appellants, and dehors the record, to reverse the case.''

It is obvious that the court could have done nothing else than reverse the case because of the prejudice to the rights of appellant to a fair trial, affected by these uncalled for remarks and vicious invective indulged in. by the commonwealth's attorney.

The mere statement of that case and the instant one is, in itself, sufficient to make manifest the difference between the prejudicial effect of the argument made in the Napier case and that made in the instant case.

We are, therefore, led to conclude, in view of the substantial showing made by the Commonwealth's evidence as to the defendant's guilt of the theft charged, that the verdict of the jury is not to be attributed to the

improper argument of the prosecuting attorney, especially when such argument is considered along with the admonition of the court given the jury, that they were not to be governed by it, but were to base their verdict solely upon the evidence

Such being our conclusion, that the improper argument was not effective to deprive the accused of a fair trial, it follows that the judgment should be and it is affirmed.